STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ELINOR P. O'CONNOR, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1976—Decided March 2, 1976.

Before Judges HALPERN, CRANE and MICHELS.

*Mr. Jared L. McDavit,* Assistant Prosecutor, argued the cause for appellant (*Mr. George T. Daggett,* Sussex County Prosecutor, attorney).

*Mr. William G. Mulligan* argued the cause for respondent (*Mrs. Elinor P. O'Connor,* attorney).

PER CURIAM. This is an appeal by the State from the dismissal by the County Court judge of a motor vehicle complaint which charged defendant with failing to stop at a stop sign, contrary to the provisions of *N. J. S. A.* 39:4–144. The municipal court judge had found her guilty and fined her $5 and $5 court costs.

It appears undisputed that at the "T" intersection where the stop sign was posted there were no markings on the road pavement showing a crosswalk or a stop line. The county judge determined that the statute required there be painted markings on the pavement demarcating a stop line or a crosswalk in order to convict under the statute, and dismissed the complaint on defendant's motion made before the hearing. We disagree.

*N. J. S. A.* 39:4–144 provides in relevant part:

> Stopping or yielding right of way before entering stop or yield intersections
>
> No driver of a vehicle or street car shall enter upon or cross an intersecting street marked with a "stop" sign unless he has first

brought his vehicle or street car to a complete stop at *a point within 5 feet of the nearest crosswalk or stop line marked upon the pavement at the near side of the intersecting street* and shall proceed only after yielding the right of way to all traffic on the intersecting street which is so close as to constitute an immediate hazard. [Emphasis supplied]

The issue to be resolved on this appeal is whether "marked upon the pavement" modifies crosswalk, so that unless there is a marked crosswalk or stop line a motorist cannot be held to have violated the statute for disregarding the stop sign.

"Crosswalk" is defined in *N. J. S. A.* 39:1–1. The word, as defined, is to be applied in its generally accepted sense unless another meaning is clearly apparent from the language or context, or inconsistent with the legislative intent. *Singleton v. Consolidated,* 64 *N. J.* 357, 362 (1974). The act defines "crosswalk" and other applicable words in unambiguous terms:

"Crosswalk" means that part of a highway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the shoulder or, if none, from the edges of the roadway; also, any portion of a highway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other marking on the surface.

\* \* \* \* \* \* \* \*

"Right of way" means the privilege of the immediate use of the highway.

\* \* \* \* \* \* \* \*

"Sidewalk" means that portion of a highway intended for the use of pedestrians, between the curb line or the lateral line of a shoulder, or if none, the lateral line of the roadway, and the adjacent right of way line.

 Applying these definitions, a crosswalk may be either distinctly marked on the surface of the road or be an unmarked crosswalk determined by the sidewalks at the intersection. Only if there is an actual paved sidewalk or other distinctly marked "portion of a highway intended for the use of pedestrians" would a crosswalk exist at the intersection. Then it would be determined by the lateral line of the curbs,

shoulders, or edges of that roadway. Considering such a definition, we find "crosswalk" as used in § 144 means an unmarked as well as a marked one. See *Creese v. Parsekian,* 81 *N. J. Super.* 536, 544–546 (App. Div. 1963), aff'd 43 *N. J.* 326 (1964).

In construing a traffic regulation, as with the interpretation of other statutes, the goal of construction should be to effectuate the legislative intent and avoid an absurd or unreasonable result. *State v. Gill,* 47 *N. J.* 441, 444 (1966). "It is not the words but the internal sense of the act that controls. Reason is the soul of law." *San Lan Builders, Inc. v. Baxendale,* 28 *N. J.* 148, 155 (1958). The intent of the statute in question is clear. The purpose of having a motorist come to a halt at a stop street at a point within five feet of a crosswalk is to provide pedestrians with a place to cross the street safely. If no crosswalk is marked, but sidewalks exist, the motorist is required to stop at a point within five feet of where the sidewalks begin on the intersecting street. It would be an unreasonable result to hold that where sidewalks for pedestrians exist, but no stop line or crosswalk is marked, a stopping motorist is not required to leave a space for pedestrians to cross.

An absurd result is reached if the lack of a stop line or crosswalk, marked or otherwise, means a motorist can disregard the stop sign because there is no point for him to stop at within five feet. In *Cresse v. Parsekian, supra,* the court interpreted the legislative intent of § 144 thus (at 545) : "It seems to us that the intent of the section is to bring the motorist to a full stop for the very purpose of compelling him to look carefully for oncoming traffic as he enters and crosses the intersecting street."

Therefore, where no stop line or crosswalk exists the statute requires a motorist at a designated stop street to come to a complete stop at a point before the intersection where he can view the approaching traffic so as to properly yield "the right of way to all traffic on the intersecting street which is so close as to constitute an immediate

hazard." As envisioned in *Cresse v. Parsekian, supra,* where a crosswalk exists, depending on the particular intersection, a motorist may be required to make two stops at a stop street, one before the crosswalk and a second stop at a point where he can view approaching traffic.

The dismissal is reversed. Since there is no useable record of the proceedings in the municipal court, the matter is remanded to the County Court for a plenary trial *de novo* consistent with this opinion and *R.* 3:23–8.