**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1221
_____

UNITED STATES OF AMERICA

v.

SALADEN WILLIAMS,
            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 2-12-cr-00154-001)
District Judge:  Honorable Faith S. Hochberg
_____

Submitted Under Third Circuit LAR 34.1(a)
November 13, 2015
_____

Before: CHAGARES, RENDELL and BARRY, <u>Circuit Judges</u>

(Opinion Filed: December 11, 2015)
_____

OPINION[*]
_____


BARRY, <u>Circuit Judge</u>

        Saladen Williams appeals the order of the District Court denying his motion to

---

[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

suppress. For the reasons that follow, we will affirm.

I.

At approximately 9:30 a.m. on October 25, 2011, three New Jersey State Troopers were patrolling near the border of Newark and Irvington in an unmarked vehicle. As they drove west along Clinton Avenue, just before reaching South 20th Street, a GMC Yukon driven by Williams turned left onto Clinton from the south.

A stop sign was located at that intersection. Williams testified that the sign was located approximately "two car lengths" from the corner of South 20th Street and Clinton Avenue, and that he stopped before the sign itself, as opposed to the corner or crosswalk, before turning left. (A144.) Trooper Sardanopoli, who was behind the wheel of the unmarked vehicle, maintains otherwise. He testified that Williams' vehicle "did not stop and pulled out" onto Clinton directly in front of him. (A64.) Both vehicles then continued west along Clinton Avenue for two or three blocks, before Williams turned right onto Ellis Avenue. Williams maintains that he activated his signal prior to turning, but Trooper Sardanopoli testified that he did not. Seeing what they believed to be a second traffic violation (the first, his failure to stop at the stop sign), the Troopers turned right to follow Williams on Ellis and activated their emergency lights. Williams pulled over.

Trooper Sardanopoli noticed the butt of a gun protruding from under the center console in plain view. Williams admitted the gun was his and a subsequent search of the vehicle yielded drugs in its center console. The Troopers arrested Williams and took him

2

to the State Police station where he was issued summonses for four traffic violations including, among other things, his failure to observe the stop sign on the corner of Clinton Avenue and South 20th Street, in violation of N.J. Stat. Ann. § 39:4-144, and his failure to activate a turn signal prior to making a right onto Ellis Avenue, in violation of N.J. Stat. Ann. § 39:4-126.

On February 29, 2012, Williams was indicted by a federal grand jury for possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He thereafter moved to suppress the evidence, arguing that he had been subjected to an unreasonable search and seizure in violation of the Fourth Amendment because the stop was based on a mistaken interpretation of the New Jersey statutes governing stop signs and turn signals. The District Court conducted hearings on May 16, 2013 and September 11, and rejected Williams' argument in an opinion and order dated January 23, 2014. The Court found that Trooper Sardanopoli "testified credibly about what he saw" with respect to both the stop sign and turn signal violations, and that his testimony was consistent with both the then-contemporaneous "police report and [] summons issued" to Williams. (A6-7.) Taken together, and as to both infractions, the Court found that Trooper Sardanopoli "had an objective justification for making the traffic stop." (A7.)

Williams thereafter entered a conditional guilty plea permitting him to challenge the denial of his suppression motion on appeal. Judgment was entered on January 12, 2015. This timely appeal followed.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review "factual determinations for clear error and exercise plenary review over the application of the law to those facts." *United States v. Price*, 558 F.3d 270, 276 (3d Cir. 2009). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lowe*, 791 F.3d 424, 427 (3d Cir. 2015). The record is construed "in the light most favorable to the government." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

III.

Williams first claims that the District Court misinterpreted N.J. Stat. Ann. § 39:4-144(a) when it held that he had a duty to stop at the crosswalk. Specifically, he argues that, because there was no marking on the roadway for a crosswalk, his obligation under the statute was to stop where the stop sign was located (which he claims he did), not within five feet of the crosswalk.

His argument is not supported by the language of the statute. N.J. Stat. Ann. § 39:4-144(a) requires a motorist to stop at any "stop line marked upon the pavement." And if there is no marking (as was the case at South 20th Street and Clinton Avenue), the motorist must stop "within five feet of the [] crosswalk" whether marked or unmarked. N.J. Stat. Ann. § 39:4-144; *see also State v. O'Connor*, 354 A.2d 672, 673-74 (N.J. Super. Ct. App. Div. 1976) ("If no[] crosswalk is marked, but sidewalks exist, the

4

motorist is required to stop at a point within five feet of where the sidewalks begin on the intersecting street. It would be an unreasonable result to hold that where sidewalks for pedestrians exist, but no stop line or crosswalk is marked, a stopping motorist is not required to leave a space for pedestrians to cross."). This is so because the "purpose of having a motorist come to a halt … at a point within five feet of a crosswalk is to provide pedestrians with a place to cross the street safely." *Id.* at 673.

Williams did not testify that he stopped at the crosswalk, but rather that he stopped before the sign itself, which he claims was set back from the crosswalk about "two car lengths." (A144.) This was clearly insufficient, particularly where, as here, the Court reviews for reasonable suspicion to justify a stop, not for evidence to support a conviction. *See United States v. Delfin-Colina,* 464 F.3d 392, 399 (3d Cir. 2006) ("In situations where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed by the cited traffic-code provision.").

Even aside from Williams' mistaken interpretation of N.J. Stat. Ann. § 39:4-144(a), his challenge essentially boils down to credibility. Trooper Sardanopoli, who was "travelling west on Clinton Avenue [while] the vehicle in question was proceeding to head north on South 20th," testified that "[t]here was a stop sign there," and that "the vehicle did not stop and pulled out … onto Clinton." (A64.) The District Court found that, as to these observations, "Trooper Sardanopoli testified credibly about what he saw

5

and [] had an objective justification for making the traffic stop." (A6.) And, although not explicitly finding Williams' testimony to be "incredible," it implicitly did so when it found that testimony "insufficient to call into doubt Trooper Sardanopoli's testimony regarding [Williams'] failure to stop." (*Id.*)

We have no basis on which to question the District Court's credibility finding, and that finding is not reviewable on appeal. *See, e.g., United States v. Petersen,* 622 F.3d 196, 200-01 (3d Cir. 2010) (affirming denial of suppression motion despite argument that "surveillance videotape" suggested officer could not have seen the defendants run a stop sign where the officer "clearly testified that he did" and the district court chose to credit that testimony). Crediting then, as we must, Trooper Sardanopoli's testimony that Williams failed to stop at the intersection of South 20th Street and Clinton Avenue, the District Court correctly determined that reasonable suspicion justified the subsequent traffic stop.

Williams also takes issue with Trooper Sardanopoli's second (and independent) basis for his ultimate seizure—his apparent failure to signal before making a right onto Ellis Avenue, contending that a conviction for turning without signaling requires evidence that his alleged failure had the potential to affect traffic, and that the absence of such testimony upends the apparent justification for the stop.

We need not reach this issue because the stop was independently justified by the first infraction. *See United States v. Dupree,* 617 F.3d 724, 728 n.2 (3d Cir. 2010) ("[W]e may affirm for any reason supported by the record" when "a party asks us to

6

affirm a district court's suppression ruling.") (emphasis omitted). We note, however, that the issue of a potential to affect traffic caused by a failure to signal was never raised to the District Court, and thus was waived on appeal. Although Williams testified that he used the turn signal, his statement in support of his motion did not even mention the fact of his turn onto Ellis Avenue, let alone his use of a turn signal in connection therewith, and his attorney did not suggest at the hearings or in his post-hearing letter brief that the purported absence of an effect on traffic served as an additional basis for his challenge of the stop. *See Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.") (quotation marks omitted). While Williams may have argued more generally that he did, in fact, signal before turning, this was insufficient to preserve the specific argument he now raised to us. *See United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013) ("We hold that for parties to preserve an argument for appeal, they must have raised the same *argument* in the District Court—merely raising an *issue* that encompasses the appellate argument is not enough. Consequently, the degree of particularity required to preserve an argument is exacting.") (emphasis in original).

## IV.

The order of the District Court will be affirmed.