DIVISION OF MOTOR VEHICLES, PETITIONER-RESPONDENT,
v. JOSEPH LEVINE, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1983—Decided May 16, 1983.

Before Judges FRITZ and JOELSON.

*Mark Baumgarten* argued the cause for appellant (*Ravin & Kesselhaut,* attorneys; *Mark Baumgarten* and *Bernard Schenkler,* on the brief).

*Georgine Natelli DeAngelis,* Deputy Attorney General, argued the cause for petitioner-respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Deborah T. Poritz,* Deputy Attorney General, of counsel; *Georgine Natelli DeAngelis,* on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

Appellant seeks to reverse an order of the Director of the Division of Motor Vehicles suspending his driving privilege for one year and requiring "a drivers re-examination" consequent upon his involvement in an intersection accident resulting in a death. The Director evidently accepted the findings of fact, conclusions of law and recommendations of an administrative law judge following a plenary hearing on notice.[1]

The notice of proposed suspension which eventuated in the hearing charged appellant with having violated *N.J.S.A.* 39:4-119 in his having "failed to stop and yield at intersection controlled with a red flashing beacon," and with careless driving, an offense described in *N.J.S.A.* 39:4-97.

Appellant sets forth a number of arguments in his brief: POINT I. The findings by the Administrative Law Judge and the Director of Division of Motor Vehicles were arbitrary capricious and unsupported by the evidence and should be reversed.

---

[1] In her "memorandum decision," the Director said simply:

... Prior to this final determination, I have reviewed the Administrative Law Judge's Initial Decision and exceptions filed by respondent's counsel. Based upon the record presented, I affirm the Administrative Law Judge's Initial Decision.

A.  The Director of Motor Vehicles has failed to establish defendant's violation of traffic offenses for which the proposed suspension is based.

B.  The testimony of Sheila Olcsvary was incredible, and the acceptance of her testimony by the Administrative Law Judge was an abuse of discretion.

C.  The statement of Denise King dated September 28, 1979, was inadmissible hearsay and should have been excluded.

POINT II.  A suspension of defendant's driving privileges would be an abuse of discretion under the facts and circumstances of the case.

POINT III.  The Director's notice of suspension which merely cites the statutory offenses constitutes a denial of due process in that it fails to specify the precise grounds for suspension.

With the single exception of an issue of law, which we consider below, we are satisfied these clearly lack merit. *R.* 2:11–3(e)(1)(D) and (E).

Our concern involves *N.J.S.A.* 39:4–119 ("Operation of beacons and flashes; red; amber). This statute reads as follows:

Traffic control signals and beacon or flashing signals when operating as flashing mechanisms shall conform to the following:

a.  Flashing red: The red lens when illuminated with rapid intermittent flashes shall require drivers to come to a complete stop before entering or crossing the intersection.

b.  Flashing amber: The amber lens when illuminated with rapid intermittent flashes shall indicate the presence of danger and require drivers to proceed only with caution.

In this matter, the administrative law judge found:

3.  The above intersection was controlled, in Mr. Levine's direction, by a flashing red signal light, which requires drivers to come to a complete stop before entering or crossing the intersection.

4.  The respondent made a full stop approximately 55 feet from the near crosswalk of the above intersection. His clear vision of traffic that might have been crossing in front of him on South Street was partially obscured to the right by a hedge.

5.  After making the above stop, Mr. Levine accelerated and proceeded into the intersection without stopping again or making further observation of traffic that might have been approaching the intersection on South Street from the right.

. . . .

8.  The respondent entered the intersection without making sufficient observation of traffic crossing the intersection from his right, under circumstances where the respondent was obliged to yield the right-of-way to such cross-traffic.

9. The respondent improperly disregarded the requirement imposed upon him by the presence of the flashing red beacon. Although he came to a complete stop before entering the intersection, he did not make a reasonably sufficient observation of other traffic entering the intersection which had the right of way. He then failed to yield to an approaching vehicle that had the right-of-way in the intersection.

He opined:

> A motorist's obligation under *N.J.S.A.* 39:4-119 is to come to a complete stop before entering or crossing the intersection. Implicit in that obligation is also the obligation, after making the complete stop, to proceed only after yielding the right-of-way to all traffic on the intersecting street which is so close as to constitute an immediate hazard. *See N.J.S.A.* 39:4-144.

The precise question thereby presented is whether a motorist's obligation insofar as *N.J.S.A.* 39:4-119 is concerned is satisfied once he or she has stopped at a flashing red light or whether that motorist must also yield to traffic approaching on an intersecting street. While the question seems almost to answer itself in favor of the latter alternative, the matter becomes a little less clear in circumstances such as those present in this case. Here the line on the roadway designating the place at which appellant should stop for the flashing red light was a substantial distance from the intersection in the lane in which appellant was travelling, perhaps as much as 55 feet. Appellant did stop there. But at this point a tall hedge to his right prevented an effective observation to the right, the direction from which the decedent was approaching.

The administrative law judge grafted a requirement upon *N.J.S.A.* 39:4-119, by implication, by his holding that this statute required the motorist not only to make a complete stop but "to proceed only after yielding the right-of-way to all traffic on the intersecting street which is so close as to constitute an immediate hazard." This seems to make a good deal of sense, but the difficulty is the statute does not say this. Compare *N.J.S.A.* 39:4-144 in which the Legislature did in fact impose the obligation to yield.

In this latter respect, a significant statutory difference appears between the stop light legislation and the stop sign legislation, which serves to explain why the lawmakers may

have omitted the duty to yield at the stop light and imposed it at the stop sign. *N.J.S.A.* 39:4–144, which controls the activities of a motorist on a street with a stop sign, designates a precise point at which the motorist shall stop, obviously close enough to observe traffic on the intersecting street, and notably is silent with regard to traffic on the intersecting street. Conversely, *N.J.S.A.* 39:4–119 says nothing at all about the distance from the intersection at which the motorist must stop. Here, as noted above, it was at a place far too removed from the actual intersection to permit effective observation. But perhaps more significantly, this traffic light statute does control traffic on both streets, adjuring motorists on the cross-street with the flashing amber light "to proceed only with caution." Thus viewed, that which might initially and superficially appear to be an absurd result (contrast *State v. O'Connor,* 139 *N.J.Super.* 552 (App.Div.), certif. den. 71 *N.J.* 346 (1976)) loses its apparent unreasonableness. At the same time the important imperative of the separation of powers is observed by our unwillingness to permit either the executive or judicial branches to do what they think the legislative branch should have done, under the guise of statutory construction.[2]

Moreover, *N.J.S.A.* 39:4–119 is a penal statute, *quasi-criminal* in nature, *State v. Cooper,* 129 *N.J.Super.* 229 (App. Div.), certif. den. 66 *N.J.* 329 (1974), and so must be strictly construed. *State v. Gratale Bros., Inc.,* 26 *N.J.Super.* 581 (App. Div.1953). With that in mind, we hesitate to superimpose upon this statute a procedure which the Legislature did not articulate.

For these several reasons we reverse the determination insofar as it finds a violation of *N.J.S.A.* 39:4–119.

Accordingly, we remand to the Director of the Division of Motor Vehicles for a redetermination of the sanctions to be imposed for the violation of *N.J.S.A.* 39:4–97. In this respect we

---

[2] If we have misinterpreted the intent of the Legislature, amendatory legislation will result and the separation of powers doctrine will have been vindicated.

observe that we have already held above that there was no merit in appellant's contention that a suspension of his driving privileges constituted "an abuse of discretion under the facts and circumstances of the case." Our remand is not to be deemed an expression on our part that the suspension must be reduced or eliminated because we have reversed the findings with respect to one of the charges. The finding of a violation of the other statute remains and the penalty to be imposed remains a matter of the sound exercise of the broad discretion entrusted to the Director. *Cresse v. Parsekian,* 81 *N.J.Super.* 536 (App. Div.1963), aff'd 43 *N.J.* 326 (1964). We intimate no view respecting the manner in which this discretion should be exercised. *See Butz v. Glover Livestock Comm'n Co.,* 411 *U.S.* 182, 185–189, 93 *S.Ct.* 1455, 1457–60, 36 *L.Ed.2d* 142 (1973), reh. den. 412 *U.S.* 933, 93 *S.Ct.* 2746, 37 *L.Ed.2d* 162 (1973), and *Polk v. Cherry Hill Apartments, Inc.,* 62 *N.J.* 55, 58 (1972).

Remanded for further proceedings pursuant to the foregoing. We do not retain jurisdiction.