206 N.J. Super. 246 (1985)
502 A.2d 81
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRENDA PERLSTEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 1985.
Decided December 31, 1985.
*248 Before Judges KING, SIMPSON and SCALERA.
Herbert F. Lawrence, P.A., for appellant (Stuart J. Bierman, on the brief).
John A. Kaye, Monmouth County Prosecutor (James W. Kennedy, of counsel, Kevin M. Clark, Legal Assistant, on letter brief).
The opinion of the court was delivered by SCALERA, J.S.C. (temporarily assigned).
This appeal follows from defendant's convictions in the municipal court and later in the Superior Court after a trial de novo. Defendant has filed a notice of appeal from her conviction for obstructing the administration of justice contrary to *249 N.J.S.A. 2C:29-1, having a PBA sticker on her windshield contrary to N.J.S.A. 39:3-74, and refusing to display her driver's license, insurance card and motor vehicle registration in violation of N.J.S.A. 39:3-29. In her supporting brief, appellant limits her appeal to specific attacks based on the language of N.J.S.A. 2C:29-1, an alleged illegal arrest under N.J.S.A. 39:3-29 and then, after baldly asserting a pointless confrontation initiated by the police officer involved, asks this court to "overturn the convictions against" her.[1]
Both trials resulted in the establishment of the same basic facts surrounding the incident in question. On June 6, 1984 Officer Lizzano saw Ms. Perlstein driving down Main Street in Bradley Beach in her four-door Volvo. His attention was drawn to her car because he saw a PBA door decal on her windshield just above the inspection sticker. He and Officer Sisliano followed and when she parked her car, Officer Sisliano pulled up alongside the rear portion of the Volvo. Officer Lizzano alighted from the car, while Officer Sisliano went down the block to turn around and park on the other side of the street out of traffic. Officer Lizzano walked up to the driver's side of the Volvo, confirmed that it was a PBA decal and said, "Brenda, you're going to have to take this out of the car right away." Ms. Perlstein asked "Why?" Officer Lizzano informed her that it was a violation of state law to obstruct the windshield and the prosecutor had advised the police that the PBA should not allow them to be placed anywhere on motor vehicles. Ms. Perlstein then asked Officer Lizzano if she had to remove it "right away." When he told her it had to be removed immediately, she asked if he had a scraper. She intimated that she might have one in her office a half block away. Lizzano was *250 going to allow her to go get the scraper. However, at that point, Ms. Perlstein became uncooperative and refused to remove it. She stated that she paid the PBA for the sticker and he had no right to tell her to remove it and that the PBA was harassing her. Lizzano then told her that if she did not remove it he was going to give her a summons. She still refused and started to rant and rave that she was being harassed for donating to the PBA.
As a result, Lizzano crossed the street to the patrol car to obtain his summons book. Then he asked Ms. Perlstein for her license and registration which she refused to tender. She continued to spew a barrage of comments at Lizzano. Lizzano told her that if she did not show her license, registration and insurance card he would issue her three more summonses. She persisted in her refusal. Then she said that she was going to see the Chief of Police to see what he had to say about this incident. With the car door open, she picked up her keys from the seat, put them in the ignition, turned on the car and put it in reverse. Lizzano was standing in the open door and knew he could be hurt if the car moved so he reached in and grabbed the keys. Thereafter, he placed her under arrest.
After arresting Ms. Perlstein, Lizzano told her to get out of the car but she refused. He asked her several times to get out of the car and finally he grabbed her left wrist and gave a "slight tug" to encourage her to move. He warned her that if she continued to refuse to move he would charge her with resisting arrest. Finally, she did get out of the car, was handcuffed and was taken to police headquarters where she was given her Miranda rights. Initially, she refused to give any arrest information but finally cooperated. After the arrest information was taken and the complaints signed, Ms. Perlstein was released. She was in police headquarters approximately 45 minutes.
Ms. Perlstein denied ever having been told prior to this incident that it was illegal to have the PBA decal on her *251 windshield. However, Officer Hesse testified that on May 11, 1984 he investigated a minor traffic accident in which Ms. Perlstein was involved. At that time he saw the decal, advised her that it was illegal and told her to remove it as soon as possible.
Brenda Perlstein was charged with having a PBA sticker in her windshield in violation of N.J.S.A. 39:3-74, obstructing the administration of law in violation of N.J.S.A. 2C:29-1 and refusing to display her driver's license, insurance card and vehicle registration in violation of N.J.S.A. 39:3-29 (three separate counts). She pled guilty to the charge of having a PBA sticker on her windshield. Ms. Perlstein also filed a complaint against Officer Richard Lizzano charging him with simple assault and harassment. At the municipal court trial she pled guilty to the charge of having the PBA sticker on her windshield in violation of N.J.S.A. 39:3-74. She was adjudged guilty of all other charges. The counter charges against the officer were dismissed. On appeal to the Superior Court, after a trial de novo, she was adjudged to be guilty of having violated N.J.S.A. 39:3-74, 39:3-29 and 2C:29-1. With regard to the violations of N.J.S.A. 39:3-74 and 39:3-29 she received fines totalling $45 plus costs of $20. For violation of N.J.S.A. 2C:29-1, she received a fine of $150 plus costs of $15.
Appellant contends that her conviction of having violated N.J.S.A. 2C:29-1 was improper because (1) it "does not apply to flight by a person refusing to submit to an arrest," (2) it "does not apply to flight by a person charged with a crime," (3) it "does not apply to people who have failed to perform a legal duty," and (4) "she did not purposefully attempt to obstruct the administration of justice." She further asserts that her conviction of N.J.S.A. 39:3-29 was invalid because "the officer did not have the authority to arrest ... for merely violating N.J.S.A. 39:3-29" and "in the alternative, it is grossly improper for policemen to arrest a citizen for a violation of N.J.S.A. 39:3-29." Finally, as noted, she asks this court to invalidate all the convictions (presumably including the one to which she pled *252 guilty) because it was improper here for "a policeman to so agitate and alienate a productive and law abiding citizen to the extent that she does not want to produce her documents, but instead feels that it is necessary to see the officer's superiors to register a complaint."
We feel it difficult to restrain from comment about the unprofessionalism of projecting such complex contentions without any attempt to support their validity by citations to authoritative sources or by utilization of the principle of stare decisis. Nonetheless, we will briefly address each contention as best we can comprehend it.
Appellate review of a judge's decision in a non-jury case is limited in its scope. State v. Johnson, 42 N.J. 146, 161 (1964). The appellate tribunal needs to inquire "... whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." Id. at 162. In pursuing this inquiry, deference should be given to those findings of the trial judge that arise from his opportunity to hear and see witnesses and to have the "feel" of the case. Id. at 161. A review de novo should occur only when the appellate court "... is thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." Id. at 162.
In this case, both judges below found that defendant was guilty of violating N.J.S.A. 2C:29-1. This statute states:
A person commits a disorderly persons offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
This statute is designed to prohibit a broad range of behavior directed at impeding or defeating the lawful operation of government. Final Report of New Jersey Criminal Law *253 Revision Commission, Vol. II: Commentary, 1971 at 280. (hereinafter, "Commentary"). It is a supplementary provision which contains limitations to avoid its utilization where other sections would be appropriate. Ibid. As a result, its use is limited to situations where there is violent or physical interference or where other acts occur which are unlawful independently of the purpose to obstruct government. State v. Kent, 173 N.J. Super. 215, 222 (App.Div. 1980); Commentary at 280. Consequently, the question becomes whether appellant obstructed, impaired or perverted the performance of Officer Lizzano's duties by physical interference or by engaging in an unlawful act.
Under statutory provision, municipal police are empowered to enforce the motor vehicle laws. N.J.S.A. 39:5-1. A driver of a motor vehicle is required to exhibit his driver's license, insurance ID card and the registration certificate when requested to do so by a police officer, while in the performance of his duties. N.J.S.A. 39:3-29. Additionally, at all times drivers must comply with any direction, whether by voice or hand, of a police officer when enforcing a provision of the motor vehicle laws. N.J.S.A. 39:4-57.
The facts clearly show that appellant engaged in independently unlawful acts when she refused to show her driving credentials and when she attempted to move her car contrary to Lizzano's directions. State v. Kent, 173 N.J. Super. at 222-223; State v. Manning, 146 N.J. Super. 589 (App.Div. 1977); Tp. of East Brunswick v. Malfitano, 108 N.J. Super. 244 (App.Div. 1970). While these cases involve statutes whose wording differs from the statute in question they are indicative of the types of behavior found to obstruct the administration of justice. See also Spears v. State, 412 N.E.2d 81 (Ind. App. 1980).
She claims that she did not purposely obstruct the administration of law. A person acts purposely with respect to the nature of his conduct if it his conscious object to engage in conduct of that nature. N.J.S.A. 2C:2-2b(1). Based on the evidence, it is *254 apparent that it was her conscious object to refuse to show Lizzano her driving credentials and to leave the scene and proceed to headquarters contrary to Lizzano's directions not to move the car. On the basis of this evidence, she purposely obstructed the performance of Lizzano's duties in violation of N.J.S.A. 2C:29-1. It is ludicrous that defendant argues that she was proceeding to headquarters not to obstruct the administration of the law but to further it. Nothing in her conduct that day substantiates such an argument.
Defendant further claims that she cannot be found to have violated N.J.S.A. 2C:29-1 because she fits within each of the exceptions provided in that statute. For example, it does not apply to a person refusing to submit to arrest. Defendant argues that she was effectively under arrest from the moment the policeman observed her vehicle in violation of N.J.S.A. 39:3-74 and approached her about it, otherwise the policeman would not have been able to reach into the car and remove her keys. Lastly, she claims that it is not possible to tell when the arrest occurred.
Courts have held repeatedly that a stop for a motor vehicle violation does not necessarily constitute an arrest. State v. Harbatuk, 95 N.J. Super. 54, 60 (App.Div. 1967); see State v. Evans, 181 N.J. Super. 455 (App.Div. 1981); Strelecki v. Coan, 97 N.J. Super. 279 (App.Div. 1967); State v. Bell, 89 N.J. Super. 437 (App.Div. 1965). In fact, the usual traffic stop has been found to be more analogous to a Terry stop, (Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) than to a formal arrest. Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317, 334 (1984). Defendant's argument that an arrest occurred at the time of the stop lacks merit. Moreover although defendant contends that it is impossible to say when the arrest actually occurred, the evidence clearly established that she was arrested when she attempted to leave the scene. Finally, defendant's claim that she must have been under arrest in light of Lizzano's actions in grabbing the keys is meritless. *255 Lizzano's action was predicated totally on his concern for his own safety. Furthermore, once defendant attempted to leave the scene Lizzano had probable cause to arrest and properly could exert the amount of control over Perlstein that attends an arrest.
Also, N.J.S.A. 2C:29-1 excepts flight by a person charged with a crime. Defendant claims that if the statute does not apply to a person charged with a crime, it cannot apply to a person charged with a lesser-included offense. Based on the facts as stated above, it is clear that defendant was not charged with a crime. It is well settled that Motor Vehicle violations are only quasi-criminal in nature. Motor Vehicles Div. v. Levine, 190 N.J. Super. 2, 6 (App.Div. 1983); State v. Cooper, 129 N.J. Super. 229, 231 (App.Div. 1974), certif. den. 66 N.J. 329 (1974). But defendant's argument that it also does not apply to a lesser-included offense totally lacks merit. A lesser-included offense would still be a crime. See N.J.S.A. 2C:1-8. For these reasons, defendant's behavior does not fit within this exception.
Lastly, N.J.S.A. 2C:29-1 does not apply to people who have failed to perform a legal duty. Defendant claims that by failing to show her driving credentials she failed to perform a legal duty and, therefore, the statute cannot be applied to her. Such a reading of the statute, however, would render superfluous the provision of the statute condemning behavior "by means of any independently unlawful act." It is axiomatic that, if reasonably avoidable, legislative language must not be found to be inoperative, superfluous or meaningless. Matter of Sussex Cty. Mun. Utilities Authority, 198 N.J. Super. 214 (App.Div. 1985); Hackensack Bd. of Ed. v. Hackensack, 63 N.J. Super. 560 (App.Div. 1960). We decline to do so here.
Defendant contends that her arrest for violating N.J.S.A. 39:3-29 was unlawful because the statute limits its penalty to $100 and because it was grossly improper. Initially, it should be noted that defendant did not raise this below and *256 failed to indicate that omission in her brief. R. 2:6-2(a). An appellate court can decline to consider issues not raised below unless the issues go to the trial court's jurisdiction or concern matters of great public interest. Nieder v. Royal Indemnity Ins. Co. 62 N.J. 229, 234 (1973).
The defendant correctly points out that N.J.S.A. 39:3-29 states, inter alia, "Any person violating this section shall be subject to a fine not exceeding $100." On the basis of this language, defendant claims that this was the only penalty that could be imposed upon her for failure to show her license, registration and insurance ID card. However, the statute does not by its own words limit the penalty to a $100 fine. Further, defendant overlooks N.J.S.A. 39:5-25 which states:
Any constable, sheriff's officer, police officer, peace officer, or the director may, without a warrant, arrest any person violating in his presence any provision of Chapter 3 of this Title, ....
The court in State v. Gray, 59 N.J. 563, 568 (1971) adopted such a construction of N.J.S.A. 39:5-25. It stated that "[w]hen the defendant failed to produce his driver's license and a registration certificate, the officers were empowered to arrest him. N.J.S.A. 39:5-25...." Id. at 568 Accord State v. Roberson, 156 N.J. Super. 551, 554 (App.Div. 1978), certif. den. 77 N.J. 487 (1978); State v. Campbell, 97 N.J. Super. 435, 441 (App.Div. 1967); rev'd on other grnds. 53 N.J. 230 (1969); State in Interest of J.B. Jr., 131 N.J. Super. 6, 14-15 (Cty.Ct. 1974). Consequently, Perlstein's arrest for failure to produce her driving credentials was lawful.
Additionally, it does not appear from the facts that she was arrested only because she failed to produce her driving credentials. It was not until Perlstein attempted to leave the scene that she was placed under arrest. This action constituted an attempt to obstruct the administration of the law. As such, Perlstein committed a disorderly person's offense in the presence of Lizzano, and he was empowered to arrest her. State v. Macuk, 57 N.J. 1, 8 (1970); see State v. Burnett, 42 N.J. 377, 386 (1964).
*257 Appellant's other contentions are likewise totally devoid of any merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] We feel constrained to comment that the appellant's brief failed to comply with the applicable rules in substantial regard. In addition, there were no citations in support of any of the arguments proffered, aside from the statute forming the basis for the convictions. R. 2:6-2(a)(5). Shaw v. Calgon, 35 N.J. Super. 319, 329 (App.Div. 1955).