┌─────────────────────────────────────────────────────┐
│        **NOT FOR PUBLICATION WITHOUT THE**           │
│        **APPROVAL OF THE APPELLATE DIVISION**        │
│                                                      │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│ Although it is posted on the internet, this opinion is binding only on the │
│ parties in the case and its use in other cases is limited. R.1:36-3. │
└─────────────────────────────────────────────────────┘

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0853-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRIAN CARTER,

    Defendant-Appellant.

_____

        Argued December 13, 2016 — Decided June 27, 2017

        Before Judges Messano, Guadagno and Suter.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 15-028.

        Daniella Gordon argued the cause for appellant (The Gordon Law Firm, attorneys; Ms. Gordon, on the briefs).

        Jeffrey St. John, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Keri-Leigh Schaefer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Following a de novo trial in the Law Division on appeal from the Red Bank municipal court, defendant Brian Carter was found guilty of three summonses charging him with failing to possess his

driver's license, vehicle registration and insurance identification card, N.J.S.A. 39:3-29; another summons charging him with failing to properly signal, N.J.S.A. 39:4-126; and a complaint charging defendant with obstructing the administration of law, N.J.S.A. 2C:29-1(a). The judge imposed certain fines and monetary penalties.

In the municipal court, defendant moved to suppress evidence alleging a lack of "probable cause for the [motor vehicle] stop and subsequent arrest." The municipal court judge considered the testimony of Red Bank police officer Thomas Doremus, as well as the motor vehicle recording (MVR) from a camera in Doremus's police car.[1] Doremus testified that on the morning of April 8, 2013, he was on patrol driving westbound on Monmouth Street near its intersection with Shrewsbury Avenue. Defendant's car was ahead of Doremus's vehicle proceeding in the same direction.

Doremus testified defendant made a left turn, southbound onto Shrewsbury Avenue, accelerated quickly and came within two-and-one-half feet of the vehicle in front of him. Doremus saw

---

[1] "[A]ppellate review of a municipal appeal to the Law Division is limited to 'the action of the Law Division and not that of the municipal court.'" State v. Palma, 219 N.J. 584, 591-592 (2014) (quoting State v. Joas, 34 N.J. 179, 184 (1961); State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001)). However, in this case, the legal issues raised on appeal require a detailed recitation of the testimony in the municipal court and the findings and legal conclusions of the municipal court judge.

defendant follow the car in front of him too closely for approximately sixty-five feet. Doremus also turned left and proceeded south on Shrewsbury before he saw defendant's car "abruptly pull to the curb . . . without using the turn signal." Doremus activated his overhead lights and approached, requesting defendant's credentials.

The MVR video was played in court. As defendant's car approached the intersection of Monmouth and Shrewsbury before turning left, the judge asked Doremus "do you see any blinker or anything . . . on that automobile?" Doremus responded, "I don't, at the time, I don't recall." Defense counsel noted defendant was not charged with failing to signal at the intersection but only when he later pulled to the curb. In addition, she insisted the video actually showed defendant signaled a left turn. An extended colloquy ensued between defense counsel and the judge as the judge repeatedly reviewed the video.

On cross-examination, Doremus testified that a car and truck followed defendant's car southbound on Shrewsbury before Doremus turned, meaning defendant's car was the third vehicle ahead of the police unit.[2] Doremus testified that defendant's abrupt turn to the curb without signaling caused other cars behind him to brake

---

[2] In actuality, the video shows two cars followed defendant's vehicle.

suddenly. However, Doremus admitted the MVR did not show the vehicle immediately in front of the police car ever applied its brakes, nor did it show defendant's abrupt turn to the curb. Doremus acknowledged that defendant's car was already parked at the curb when he approached.

Defense counsel argued it was impossible for Doremus to have observed defendant following too closely or failing to signal as he parked at the curb. As she began to argue that Doremus's estimations of defendant's speed and distance were mathematically impossible, the judge interrupted:

> I don't even have to address the issue as to whether he's driving too close. . . . [T]here [were] two summonses issued. . . . I find. . . there was a reason for the stop . . . and I'm not even addressing the issue of him driving too closely.
>
> I find, from what I viewed on the video, that [defendant] failed to use a signal to make a left hand turn . . . within 100 feet of the intersection. . . . I never saw a signal being put on his vehicle before he made his left turn.
>
> On that basis alone, . . . I find that there's a reason for stopping him on that date. Period, that's it. . . .
>
> . . . .
>
> I'm not granting your motion to suppress, and I'm basing it on his failure to signal when he came to the intersection . . . .

The balance of the trial ensued, with Doremus testifying about what happened after he approached defendant's already-stopped car and asked for his credentials. The driver's window was open and, without producing any documentation, defendant picked up his cellphone, claimed he was calling the United States Marshall, refused to provide his credentials and raised the window. Defendant continued to ignore Doremus's request for documentation. Doremus called dispatch and requested assistance.

Police Officer Jorge Torres testified that when he arrived and approached defendant's vehicle, defendant lowered the window and asked for a supervisor. Torres requested a supervisor respond to their location. After a third officer arrived and defendant continued to refuse to produce his credentials, Doremus "reached in [through the window,] unlocked the door, unbuckled [defendant] and had him exit the vehicle." Police arrested defendant and transported him to headquarters.

The prosecutor asked Doremus why he charged defendant with obstruction. The officer explained:

> Because while I'm in the process of the motor
> vehicle stop I requested his license,
> registration and insurance numerous times.
> [Defendant] refused numerous times, in not
> providing information and refused any action
> by me. He would not have any interaction, and

refuse[d] to give anything, any information at all.[3]

The judge acquitted defendant of violating N.J.S.A. 39:4-89, following too closely, but convicted him of the other motor vehicle offenses. As to the obstruction charge, citing N.J.S.A. 39:3-29, the judge reasoned defendant was required to produce his credentials pursuant to a "good faith traffic stop." The judge determined Doremus was "in the performance of his duties" and, based on the judge's prior ruling, had "probable cause for the initial motor vehicle stop." Citing our decisions in State v. Camillo, 382 N.J. Super. 113 (App. Div. 2005), and State v. Perlstein, 206 N.J. Super. 246 (App. Div. 1985), the judge concluded defendant's failure to produce his credentials was an "independent[] unlawful act." See N.J.S.A. 2C:29-1(a) ("A person commits an offense if he purposely obstructs, [or] impairs . . . the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of . . . physical interference . . . or . . . any independently unlawful act."). Defendant appealed to the Law Division.

---

[3] The complaint-summons actually stated defendant obstructed "by means of physical interference, specifically by, refusing to roll down his vehicle window and provide the uniformed . . . officer with his information during a motor vehicle stop."

At the start of those proceedings, the judge viewed the MVR recording. He noted that the municipal court judge made no findings regarding Doremus' credibility, "[p]robably for good reason," because the officer "couldn't have seen" what he claimed was the reason for stopping defendant's car. However, the judge concluded after viewing the video that defendant "did not signal" as he turned left onto Shrewsbury Avenue.

The judge asked defense counsel why defendant refused to produce his license for Doremus. When she responded with uncertainty, the judge referenced defendant's driver's abstract, a document not produced in the municipal court, that revealed defendant had no New Jersey driver's license and had not obtained a New York driver's license until a few days after this incident.

In rendering his oral decision, the judge concluded there were "allegedly" two bases for the motor vehicle stop. Like the municipal court judge, the judge found Doremus was not in a position to see how closely defendant was following the car in front of him. Rejecting the second alleged reason, the judge noted the MVR showed "[t]he intervening two vehicles between the front of [Doremus's] car and the rear of the defendant's car precluded the [o]fficer from making any observation as to whether [defendant] did or did not turn at that point."

However, because the summons did not specify when defendant failed to signal, i.e., whether at the intersection or at the curb, and Doremus did not recall whether defendant had signaled left at the intersection, the judge concluded the "video bec[ame] the best evidence." Based on his review of the video, the judge concluded the officer had a "factual basis" for determining defendant failed to signal left before turning.

With regard to the obstruction charge, the judge stated "Perlstein [was] on all fours with [this] particular case." He concluded defendant committed an "independent unlawful act" and therefore was guilty of obstructing. The judge imposed various fines and penalties and this appeal followed.

Defendant raises the following points on appeal:

> I. EACH OF MR. CARTER'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE SUPERIOR COURT ERRED IN MAKING AN IMPLIED FINDING THAT THE OFFICER HAD A REASONABLE SUSPICION FOR THE TRAFFIC STOP, WHERE THE OFFICER DENIED SEEING AN ALLEGED FAILURE TO SIGNAL LEFT VIOLATION, AND WHERE THE OFFICER'S OTHER STATED REASONS FOR THE STOP WERE DEEMED INVALID.

> II. THE CONVICTION FOR FAILURE TO SIGNAL SHOULD BE REVERSED BECAUSE THE MVR DOES NOT SHOW BEYOND A REASONABLE DOUBT THAT MR. CARTER FAILED TO SIGNAL LEFT AND MR. CARTER WAS NEVER GIVEN NOTICE OR DISCOVERY REGARDING A CHARGE WITH THIS ALTERNATE FACTUAL BASIS.

> III. WITH RESPECT TO THE CHARGE OF OBSTRUCTION, IT WAS ERROR FOR THE COURT TO FAIL TO MAKE ANY FINDING THAT THE OFFICER

A-0853-15T1

ACTED IN GOOD FAITH IN STOPPING MR. CARTER, WHERE THE OFFICER'S GOOD FAITH IS AN ELEMENT OF A CHARGE OF OBSTRUCTION.

IV. THE EVIDENCE IS FACTUALLY AND LEGALLY INSUFFICIENT TO SUSTAIN A CONVICTION FOR OBSTRUCTION WHERE MR. CARTER HAD REASON TO BELIEVE THAT HE WAS SUBJECT [SIC] OF A VOLUNTARY FIELD INQUIRY, NOT A MOTOR VEHICLE STOP.

V. IT WAS ERROR FOR THE SUPERIOR COURT TO REFER TO MR. CARTER'S DRIVING ABSTRACT ON ITS OWN INITIATIVE FOR THE FIRST TIME IN A TRIAL DE NOVO ON THE RECORD IN ORDER TO MAKE INFERENCES ABOUT MR. CARTER'S GUILT AND MOTIVE, WHERE THE ONLY APPROPRIATE REFERENCE TO A DRIVING ABSTRACT IS FOR SENTENCING, NOT FOR A DETERMINATION OF GUILT.

We have considered these arguments in light of the record and applicable legal standards. We reverse and remand for further proceedings consistent with this opinion.

I.

In conducting our review of defendant's conviction following a de novo trial in the Law Division, "[w]e defer to the judge's fact finding, and our 'review is limited to whether the findings made could reasonably have been reached on sufficient credible evidence present in the record.'" State v. L.S., 444 N.J. Super. 241, 247-48 (App. Div. 2016) (quoting State v. Kuropchak, 221 N.J. 368, 382-83 (2015)). "We owe no deference, however, to the 'trial court's interpretation of the law . . . and the consequences that flow from established facts[,]' which we review de novo." Id. at

248 (alteration in original) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)). We first consider whether the stop of defendant's automobile was lawful.[4]

"To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)). "To satisfy the articulable and reasonable

---

[4] As the Court recently instructed in State v. Rosario, __ N.J. __ (June 6, 2017) (slip op. at 13-15), before determining the lawfulness of an automobile stop, a judge must determine whether the police encounter was a voluntary field inquiry or an investigative stop where a reasonable person would not "feel free to leave." In Point IV of his brief, defendant contends he "had reason to believe that he was the subject of a voluntary field inquiry, not a motor vehicle stop" because he was already parked on the side of the road when Doremus pulled up and Doremus did not provide a reason for the credential's request; therefore, he was not obligated to engage in a discussion with Doremus or provide Doremus with his driver's credentials. In Rosario, the Court held the interaction between the defendant and the officer was an investigative detention because the defendant would not reasonably feel "free to leave" where she was parked lawfully outside her home when an officer blocked her in with his vehicle, directed the patrol car's alley light to shine into her car, and then approached the driver's side to ask for her credentials. Id. at 4-5, 12-15. Here, under similar circumstances, we conclude the stop was clearly an investigative detention where Doremus parked behind defendant, flashed his emergency lights, approached defendant on the driver's side, and blocked his driver's side door; such "police activity reasonably would, and should, prompt a person to think that [he] must stay put and submit to whatever interaction with the police officer was about the come," i.e., not feel "free to leave." Id. at 12.

suspicion standard, the State is not required to prove that the suspected motor-vehicle violation occurred."  State v. Locurto, 157 N.J. 463, 470 (1999).  That is, "the State need prove only that the police lawfully stopped the car, not that it could convict the driver of the motor-vehicle offense."  State v. Heisler, 422 N.J. Super. 399, 413 (App. Div. 2011) (quoting State v. Williamson, 138 N.J. 302, 304 (1994)).

Also, an officer's belief that a traffic violation actually occurred must be objectively reasonable.  State v. Puzio, 379 N.J. Super. 378, 383 (App. Div. 2005).  However, "the fact that information an officer considers is ultimately determined to be inaccurate" does not invalidate the motor vehicle stop.  State v. Pitcher, 379 N.J. Super. 308, 318 (App. Div. 2005), certif. denied, 186 N.J. 242 (2006).[5]

In this case, neither judge found Doremus made the observations he claimed to have made and justified his stop of defendant's car, i.e., following too closely or failing to signal as he pulled to the curb.  In fact, based upon their own observations of the MVR, both judges concluded the officer could

---

[5] In State v. Shannon, 222 N.J. 576, 578-79 (2015), cert. denied, ___ U.S. ___ 136 S. Ct. 1657, 194 L. Ed. 2d 800 (2016), an equally-divided Court affirmed our decision, which in turn affirmed the trial judge's order of suppression.  Because Shannon dealt with the arrest of the defendant based upon an invalid warrant, ibid., the Court distinguished Pitcher as "inapposite."  Id. at 591.

not have made those observations. In other words, this case is unlike Heisler, supra, 422 N.J. Super. at 413, where the officer made observations that proved legally insufficient to convict the defendant of a motor vehicle violation, or Pitcher, supra, 379 N.J. Super. at 318, where the officer relied upon computer information that was not timely deleted from the system. See also State v. Barrow, 408 N.J. Super. 509, 518-23 (App. Div.) (upholding seizure following stop even though facts may not have proven a motor vehicle violation), certif. denied, 200 N.J. 547 (2009).

Moreover, there is no authority to support the municipal court and Law Division judges' transmutation of their personal observations of the MVR recording into a reasonable and articulable basis for Doremus to stop defendant's vehicle. Doremus never testified that he saw defendant fail to signal at the intersection, and there is no doubt that he never thought defendant had committed a motor vehicle violation at that point. When asked at trial, Doremus candidly answered, "I don't, at the time, I don't recall." He was never asked to view the recording to refresh his memory. Therefore, while the Law Division judge determined Doremus's response left the judge free to view the tape as the "best evidence" of the incident, that conclusion did not permit the judge to find Doremus actually possessed a reasonable and articulable basis for the stop.

Additionally, we think it axiomatic that defendant could not be convicted of failing to signal at the intersection. Doremus never testified that defendant failed to signal at that point, or that the MVR recording showed that to be the case. Although the summons, as issued, did not specify exactly where the infraction took place, the State presented the case based upon Doremus's claim that the violation occurred when defendant pulled to the curb. Defendant was never on notice otherwise. It is fundamentally unfair to rest defendant's conviction solely upon the independent viewing of the MVR by the judges when the State never sought to convict defendant of that offense and proffered no testimony the offense had occurred.

As a result, we conclude based on the record before the Law Division that the stop of defendant's motor vehicle was unlawful, and the State failed to prove beyond a reasonable doubt that defendant violated N.J.S.A. 39:4-126. We reverse his conviction and remand the matter for entry of a judgment of acquittal.

II.

Even though the State failed to prove the lawfulness of the motor vehicle stop, we must nevertheless consider whether that conclusion compels reversal of defendant's convictions for failure to exhibit his driver's credentials, N.J.S.A. 39:3-29, and obstruction, N.J.S.A. 2C:29-1(a). Neither the municipal court

13

judge nor the Law Division judge specifically addressed this issue because they both found the stop was lawful.

N.J.S.A. 39:3-29 provides in pertinent part:

> The driver's license, the registration certificate of a motor vehicle and an insurance identification card shall be in the possession of the driver or operator at all times when he is in charge of a motor vehicle on the highways of this State.
>
> The driver or operator shall exhibit his driver's license and an insurance identification card, and the holder of a registration certificate or the operator or driver of a motor vehicle for which a registration certificate has been issued . . . shall also exhibit the registration certificate, <u>when requested so to do by a police officer or judge, while in the performance of the duties of his office</u> . . . .
>
> [(Emphasis added).]

N.J.S.A. 2C:29-1(a) provides:

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant <u>from lawfully performing an official function</u> by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.
>
> [(Emphasis added).]

Both judges concluded the evidence supported a conviction for obstruction by "means of any independently unlawful act."[6]

In Perlstein, police stopped the defendant for having a PBA sticker on her windshield. 206 N.J. Super. at 249. The officer allowed her an opportunity to remove the sticker, but the defendant refused and also refused to provide her credentials. Id. at 249-50. The officer told the defendant he would issue summonses if she refused to produce her license, registration, and insurance card. Id. at 250. She did and was subsequently charged with obstruction. Id. at 251.

We reasoned that N.J.S.A. 39:3-29 required the production of credentials upon the officer's demand, and N.J.S.A. 39:4-57 required all drivers to comply with the officer's direction while enforcing provisions of Title 39. Id. at 253. As a result, we held that refusing an officer's request to show driving credentials and failing to comply with the officer's directions are "independently unlawful acts" sufficient to support a conviction

---

[6] Defendant does not specifically argue this was error. In any event, the court has the authority to amend the precise charge to the evidence produced at trial. See R. 7:14-2 (permitting a municipal court to "amend any process or pleading . . . for any variance between the complaint and the evidence adduced at trial, but no such amendment shall be permitted which charges a different substantive offense)." Defendant has not argued he was convicted of "a different substantive offense."

for obstruction of justice under N.J.S.A. 2C:29-1. Id. at 253-54.

In short, we agree with the Law Division judge that Perlstein is dispositive. Defendant's conduct after Doremus and the other officers approached his car was sufficient to convict defendant of the motor vehicle offense and obstruction.

Our recent decision in State v. Powers, 448 N.J. Super. 69 (App. Div. 2016), does not compel a different result. There, we concluded the defendant could not be convicted of obstruction by an "independently unlawful act," specifically failing to heed an officer's command under N.J.S.A. 39:4-57, because the defendant was not driving his car at the time, and the officer, who was writing a parking ticket, was not enforcing Chapter 4 of Title 39. Id. at 75-76.

However, defendant argues that he could not be convicted of obstruction because the State failed to prove Doremus acted in the good faith performance of his duties. Regarding the obstruction charge, the Court previously held "that a defendant may be convicted of obstruction under N.J.S.A. 2C:29-1 when he flees from an investigatory stop, despite a later finding that the police action was unconstitutional." State v. Crawley, 187 N.J. 440, 460, cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006). "N.J.S.A. 2C:29-1 should be construed to require

submission even to an unlawful stop . . . ." Ibid. The Court construed the statute's terms — "lawfully performing an official function" — to mean the officer must act "in objective good faith, under color of law in the execution of his duties." Id. at 460-61. The Court specified "good faith means 'honesty in belief or purpose' and 'faithfulness to one's duty or obligation.'" Id. at 461 n.8 (quoting Black's Law Dictionary 701 (7th ed. 1999)).

Regarding the motor vehicle offenses, while we could find no case interpreting the phrase, "while in the performance of the duties of his office," as used in N.J.S.A. 39:3-29, it is clear that after Delaware v. Prouse, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979), police may not randomly stop motorists for credential checks. State v. Carpentieri, 82 N.J. 546, 548 (1980). We assume arguendo that the State must demonstrate Doremus acted "in objective good faith, under color of law in the execution of his duties," when he demanded defendant produce his credentials. Crawley, supra, 187 N.J. at 460-61.

Unfortunately, as noted, the issue was not addressed in either the municipal court or the Law Division. Defendant argues that because neither judge credited Doremus's testimony regarding the two reasons he stopped defendant's car, it follows the stop could not have been made in objective good faith. However, we do not believe one proposition necessarily follows the other. In other

words, the present record does not necessarily foreclose the possibility that Doremus acted in a good faith, albeit mistaken, belief that defendant had violated the motor vehicle laws.

As a result, we are compelled to reverse defendant's convictions and remand the matter for a new trial in the municipal court. See R. 3:23-8(a)(2) (permitting reversal and new trial). The State is permitted to introduce evidence demonstrating Doremus's good faith. See Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 3:23-8 (2017) (explaining post-2013 amendment to the Rule permitting the State to introduce evidence at the new trial unless barred by the Constitution or statute).

In sum, we reverse defendant's convictions. We remand the matter to the municipal court to enter a judgment of acquittal on the summons charging defendant with violating N.J.S.A. 39:4-126. We remand to the municipal court for a new trial on the summons charging defendant with violating N.J.S.A. 39:3-29 and the complaint charging him with a violation of N.J.S.A. 2C:29-1(a). Our conclusion that the stop of defendant's motor vehicle was unlawful is binding upon the municipal court.

Reversed and remanded.[7] We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] As a result, we need not consider Point V in defendant's brief.

A-0853-15T1