**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2885
_____

KASSIM MOUZONE; OMAYRA DIAZ,
Appellants

v.

SGT. BRIAN AHLERT, #554, operating in official capacity;
PATROLMAN TOM CAUSULLO, #552, operating in official capacity;
LT. PHIL D'ALESSIO, #548, operating in official capacity;
CITY OF FLORHAM PARK, (operating in own capacity)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-21-cv-11697)
District Judge:  Honorable Brian R. Martinotti

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 27, 2024
Before:  BIBAS, PORTER, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: March 27, 2024 )
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellants Kassim Mouzone and Omayra Diaz appeal the District Court's dismissal of their civil rights action. For the following reasons, we will affirm in part and reverse in part the District Court's judgment, and remand for further proceedings.

Appellants filed their complaint pursuant to 42 U.S.C. § 1983 alleging that their civil rights were violated by the defendants – the City of Florham Park, Sgt. Brian Ahlert #554, Patrolman Tom Causullo #552, and Lt. Phil D'Alessio – acting in their official capacities. According to their complaint, in December 2020, they were subject to a "consensual stop" by Off. Causullo.[1] ECF No. 1 at 2. Appellants allegedly asked him if they were being detained. When he responded, "Yes," they asked why, and requested that a supervisor come to the scene. Id. Sgt. Ahlert arrived, and Appellants "immediately dispelled all accusations" against them, explaining that they had just left "a private business owned by a bank" where they were denied service as a result of discrimination. Id. Ahlert "immediately concluded that [Appellants] were the victims of discrimination" and ended the investigatory stop. After initially requesting that Mouzone provide identification, Ahlert threatened both Appellants with arrest if they did not provide ID. The Appellants then requested that a "higher ranking supervisor" come to the scene. Id. Lt. D'Alessio subsequently arrived. Mouzone provided his identification to Ahlert, while telling the officers that he was doing so "under [d]uress." Id. Ahlert

_____

[1] A police report, attached to defendants' motion to dismiss, indicates that Ahlert and Causullo were dispatched to a Bank of America in response to a 911 call reporting "a dispute between a bank staff member and customers." ECF No. 16-6 at 9. While responding, an updated report indicating that the two customers had left the scene on foot and were last seen walking nearby. When they arrived on the scene, the officers observed the Appellants, who matched the description of those customers.

then allegedly "snatched" Diaz's ID out of Mouzone's hand. After Diaz told Ahlert that she was not giving consent to view her ID, he threatened her with arrest. She then indicated to D'Alessio that the ID was turned over "under [d]uress." Id. The officers ran a check on the IDs, revealing an active warrant for Diaz for a "dismissed ticket." Id. Diaz was released on her own recognizance.

Appellants claimed that their Fourth and Fourteenth amendment rights were violated because the defendant officers, while "act[ing] under color of law," illegally detained and seized them. Id. at 3. Appellants maintained that the officers were acting pursuant to the Florham Park's "unconstitutional policy and custom of seizing and searching individuals without probable cause and otherwise harassing individuals without legal cause or excuse." Id. According to the complaint, the officers violated Appellants' rights because the policy "encouraged them to stop and harass civilians without reasonable suspicion or probable cause." Id. As a result, Appellants asserted that they "sustained significant emotional harm, emotional suffering, humiliation, and inconvenience in the amount of $140,000." Id. at 4.

The defendants filed a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court granted the motion, with leave to amend the complaint within 14 days. Appellants did not amend within that time, and a text-only entry indicates that the complaint was dismissed with prejudice. See Weber v. McGrogan, 939 F.3d 232, 240 (3d Cir. 2019) (noting that a "self-effectuating" order becomes "a final order of dismissal when the time to amend

3

runs out"). Appellants filed a timely notice of appeal.[2]

We have jurisdiction pursuant to 28 U.S.C. § 1291. In conducting our review, we must liberally construe Appellants' pro se filings, see Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011), and "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom," Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (citation omitted).

To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988). The District Court determined that Appellants failed to allege the deprivation of a constitutional right. We agree that Appellants wholly failed to allege facts from which it could be determined that their 14th Amendment equal protection rights were violated. In particular, they did not allege that they were treated differently than similarly situated persons. Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) (recognizing that to properly plead an equal protection claim, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment"). We disagree,

---

[2] Although Appellants listed the wrong date of the judgment in their notice of appeal, the notice clearly specified the "Dismissal order" as the order to be appealed, see ECF No. 23. See Fed. R. App. P. 3(c)(7); see also Powell v. Symons, 680 F.3d 301, 306 n.2 (3d Cir. 2021).

4

however, that the allegations in the complaint were insufficient to state a viable Fourth Amendment violation.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To lawfully seize an individual, an officer "must have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Brown v. Texas, 443 U.S. 47, 51 (1979). Appellants alleged that when the officers first approached them inquiring about the incident at the bank, the stop was "investigatory." ECF No. 1 at 2. They further alleged that the officers accepted their explanation that they were victims of discrimination by the bank, and that the investigatory stop ended. It is at this point, Appellants alleged, that they were unlawfully seized when the officers demanded and seized their identifications "under [d]uress" and threats of arrest absent reasonable suspicion. ECF Nos. 1 at 2-3; 18 at 3-4; see also Mack v. Warden Loretto FCI, 839 F.3d 286, 291 n.2 (3d Cir. 2016) (recognizing that, in considering a motion to dismiss, a court may consider a pro se plaintiff's "allegations made in response to the defendants' motion to dismiss, which incorporate and are consistent with the allegations in his complaint"). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" for purposes of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 16 (1968); see also United States v. Mendenhall, 446 U.S. 544, 553-54 (1980) (noting that a person is seized during a police interaction when "by means of physical force or a show of authority, his freedom of movement is restrained" such that "in view of all of the circumstances surrounding the incident, a reasonable person would

5

have believed that he was not free to leave"). Appellants alleged that they did not feel free to leave when, without reasonable suspicion, the police threatened them with arrest. See ECF No. 18 at 3. Taking these allegations in the light most favorable to petitioners, we cannot conclude that Appellants could prove no set of facts entitling them to relief for a Fourth Amendment violation.

In dismissing this claim, the District Court did not grapple with the basis for the stop and whether the facts as alleged indicate that Appellants were unlawfully seized in violation of the Fourth Amendment. Id. Instead, it emphasized that, even absent reasonable suspicion, police officers may approach individuals, "pose questions and ask for identification" without running afoul of the Fourth Amendment. ECF No. 21 at 4 (quoting United States v. Smith, 575 F.3d 308, 312 (3d Cir. 2009)); see also United States v. Drayton, 536 U.S. 194, 200-01, (2002) (recognizing that officers do not unreasonably seize individuals "by approaching [them] on the street or in other public places and putting questions to them if they are willing to listen"). However, as the District Court acknowledged, Appellants alleged that they were not merely asked for identification but were compelled to provide it by threats of arrest. See Drayton, 536 U.S. at 201 (emphasizing that, absent reasonable suspicion, "officers may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means"). The District Court nevertheless determined that there was no constitutional violation because the officers had the right to arrest the Appellants under New Jersey law for failing to provide identification. But that conclusion puts an alleged violation of state law *after* the alleged violation of constitutional law.

6

The District Court cited case law recognizing that a New Jersey citizen must provide identification *once* lawfully seized. See ECF No. 21 at 4 (citing, e.g., State v. Perlstein, 502 A.2d 81, 84-85 (N.J. Super. Ct. 1985) (motorist who refuses to provide identification during a traffic stop is subject to arrest for obstruction of justice); see also See State v. Boston, 263 A.3d 214, 226 (N.J. Super. Ct. App. Div. 2021) (recognizing that a motorist is "seized" for purposes of the Fourth Amendment during the roadside stop, and may not disobey an officer's commands). But if, at the relevant time, the stop here was consensual, as alleged in the complaint and assumed by the District Court, the Appellants were not required to present their IDs. See id. at 226 (noting that "in the course of a more casual field inquiry, when the individual has not been 'seized' and remains free, judged from his perspective, to walk away," "a [New Jersey] citizen may tell a police officer, metaphorically, 'to kick rocks,' that is refuse to listen to what he has to say, and walk away without answering any of [the officer's] questions" (internal quotation marks and citation omitted)); cf. State v. Coles, 95 A.3d 136, 150 (N.J. 2014) (noting that "[w]hile individuals are not required to carry identifying documents on them at all times in our free country, we accept that law enforcement acting under reasonable suspicion of an individual can expend a brief but reasonable period of time to confirm an individual's identity" while investigating a nearby, reported armed robbery).

The District Court also determined that the officers could seize the identification card because it was "in plain view during their consensual stop." ECF No. 21 at 5 (citing cases). But again, the cases on which the District Court relied were inapposite, as they involved the seizure of items in plain view where the persons were lawfully detained.

7

See, e.g., United States v. Sanders, 404 F. App'x 613, 617 (3d Cir. 2010) (finding that officers who "were authorized to stop and detain Sanders in order to investigate the traffic violation" could lawfully seize a package in plain view); Jewett v. Anders, 521 F.3d 818, 827 (7th Cir. 2008) (determining that an officer could retrieve an individual's identification from their wallet during a Terry stop). The allegations in the complaint sufficiently allege that Appellants were unlawfully seized *when* the officers demanded their identification under threat of arrest absent reasonable suspicion. Therefore, the claim was improperly dismissed under Rule 12(b)(6).

Appellants' Fourteenth Amendment claim was based on their alleged Fourth Amendment violation.[3] See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) (recognizing that a government body may be liable under § 1983 for a custom or policy that is responsible for a constitution violation). The District Court dismissed the Monell claim based on its erroneous determination that Appellants had failed to sufficiently plead the predicate constitutional claim. Thus, we will vacate the District Court's judgment with respect to both the Fourth and Fourteenth Amendment claims. We note that the complaint does not include enough specifics to state a Monell claim but Appellants are free to amend it on remand to try to cure that deficiency.

---

[3] The District Court properly rejected the individual defendants' argument that they were entitled to qualified immunity, noting that all defendants were sued solely in their official capacities. See Owen v. City of Independence, Mo., 445 U.S. 622, 650 (1980) (holding that qualified immunity from suit under § 1983 does not extend to municipal defendants or government employees sued in their official capacity). Official-capacity lawsuits are, in all respects other than name, to be treated as lawsuits against the government entities. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Based on the foregoing, we will affirm the District Court's judgment insomuch as it dismissed the equal protection claim, vacate the judgment as to the remaining claims, and remand for further proceedings consistent with this opinion.[4]

---

[4] We agree with Appellees that, to the extent that Appellants raise First and Fifth Amendment claims for the first time on appeal, those claims are waived. See Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001).