93 N.J. Super. 111 (1966)
225 A.2d 141
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD CASSATLY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1966.
Decided December 8, 1966.
*114 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Samuel A. Larner argued the cause for appellant.
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant appeals from a judgment of conviction, following a jury trial, on an indictment charging him with the crime of obstructing justice. The grounds urged for reversal are: (1) the proofs failed to establish commission of the crime of obstructing justice, (2) error in the court's charge to the jury, (3) error in permitting two witnesses to be advised of their constitutional rights against self-incrimination, and (4) the conviction was in violation of defendant's constitutional right against self-incrimination.
*115 Defendant did not testify or call any witnesses on his own behalf at the trial. The pertinent evidence presented by the State was as follows.
Defendant Cassatly was president of Allwood Enterprises, a corporation which sought to erect a ten-story hotel near State Highway S-3 in the City of Clifton. A change in the zoning ordinance by the municipal council was necessary to permit such construction.
On March 21, 1964, while the application for change of zone was pending, defendant complained to Sergeant De Groot of the Clifton Police Department that certain councilmen, who were members of the majority bloc in the council known as the "Big Four," had solicited a bribe as a condition for approval of the zone change. He asked De Groot to arrange for a conference with William Holster, the Clifton Municipal Manager. De Groot did so, and on March 23 Holster met with defendant at the latter's office. Defendant told Holster of the "shakedown" attempts and asked if he could arrange for the police to work with him by providing tape recording instruments to record conversations he would have with the councilmen. Holster agreed, and arranged for De Groot to assist defendant. Thereafter, De Groot provided defendant with a minifon wire recorder to wear on his person and installed a tape recorder in his office.
On April 2 De Groot was called to defendant's office where he listened to a wire recording of a conversation had between defendant and Stanley Zwier, a councilman, on March 31. De Groot testified that he recognized both voices and heard defendant tell Zwier that $40,000 was too much money and he couldn't pay it; that Zwier told defendant he would try to reduce it to $20,000 if Moorman, another councilman, would go along with it. Zwier suggested that defendant see Moorman to persuade him.
On April 7 defendant told De Groot he had met with Moorman at the latter's office and that Moorman said the $20,000 would have to be paid in cash before the council would approve the zone change. On April 14 De Groot listened to a *116 recording of a conversation between defendant and Moorman recorded earlier that day. De Groot testified he recognized Moorman's voice and heard Cassatly tell Moorman he was unable to pay the $20,000 in one lump sum  that he would be able to pay $10,000 before the hotel was constructed and $10,000 afterwards. Moorman refused, stating he wanted the entire $20,000 before the zone change would be approved by the council; that there were "set figures for passing these variances" which had to be adhered to; and that there were other councilmen he would have to see to get the approval.
On April 18 defendant again called De Groot to his office and said he had a tape recording of a conversation with Zwier recorded at defendant's office. De Groot testified he listened to the recording and hear Zwier say that defendant had to pay to get the approval and that if defendant didn't have the $20,000 he could pay $10,000 before the council voted its approval and $10,000 afterwards, but it would have to be in cash.
De Groot testified that on each of the occasions defendant insisted on retaining possession of the tapes, which were placed in containers, sealed, and stored in a safe cabinet in defendant's office.
During the period from April 2 until April 28, Clifton police officials and the city manager held numerous conferences concerning the investigation with Deputy Attorney General John Bergin, who assigned a special investigator to assist. On April 28 Bergin and police officials conferred with the Passaic County Prosecutor. A search warrant was obtained and Lieutenant Edmonds of the prosecutor's staff, and Detective Captain Tencza and Sergeant De Groot of the Clifton police went to defendant's office. They demanded the three recordings. Defendant said they were not in his office but in his safe deposit box in a Passaic bank. He protested that the police oction was premature; that it would jeopardize the case because he wanted to obtain additional information from two builders and to have a conversation with Councilman Sellinger recorded on a tape. He said he didn't trust *117 either the police or the prosecutor's office and had removed the tapes because he thought De Groot might steal them. A search of the premises proved fruitless. Defendant finally agreed to go with Lieutenant Edmonds to the bank the next morning and to deliver up the recordings.
On the following morning defendant met Edmonds at the bank. They entered the vault and opened defendant's safe deposit box. No recordings were stored therein. Edmonds then ascertained that defendant's last recorded visit to the vault was on April 14. After they left the bank defendant said he did not remember where he had put the recordings; that the last time he saw them they were in his briefcase. When Edmonds continued to press him as to their location, defendant telephoned his lawyer. Edmonds told the attorney that if defendant did not surrender the recordings he would be charged with obstructing justice.
Defendant was subpoenaed to testify before the grand jury on May 12 and May 19, but was not called as a witness. On May 20 Edmonds served him with a subpoena duces tecum to appear before the grand jury on May 26 and produce the recordings. Edmonds told defendant he would have to testify and produce the recordings and asked, "Why are you protecting the Big Four for? They will never protect you." Defendant replied that he would confer with his lawyer and "let him know."
On the day before the scheduled grand jury hearing defendant and his lawyer conferred with Edmonds and an assistant prosecutor. The latter asked defendant if he would produce the recordings before the grand jury. Defendant said, "I can't." The assistant prosecutor advised defendant that he had been authorized to offer him immunity from prosecution if he would appear with the recordings and testify as to their contents. Defendant stated, "I can't produce them. I don't have them."
Defendant thereafter was not called before the grand jury which subsequently indicted him for the crime of obstructing justice. The conviction and present appeal followed.

*118 I
At the close of the State's case defendant moved for a judgment of acquittal. The motion was denied and, as stated above, defendant rested his case without testifying or calling witnesses on his own behalf. He contends that the proofs failed to establish the commission of the crime of obstructing justice and that the verdict was against the weight of the evidence and should be set aside.
Defendant argues that he could not lawfully be adjudged guilty of the crime of obstructing justice because the proofs did not show that at the time he refused to surrender the recordings to law enforcement officials there was a proceeding pending before a court or a grand jury relating to the bribery solicitation, and that he had knowledge of it.
The precise issue has not been dealt with in any of the reported decisions in our State. However, we do not agree that the offense requires that at the time of commission of the act charged there must be pending a proceeding before a court or a grand jury.
We are not here concerned with a crime which has been specifically defined by a statute. The crime of obstructing justice is a common law crime made punishable as a misdemeanor under N.J.S. 2A:85-1. Under the common law it was a misdemeanor to do any act which prevents, obstructs, impedes, or hinders the due course of public justice. 1 Burdick, Law of Crimes, § 283, p. 409 (1946); Perkins, Criminal Law, p. 422 (1957). It is an obstruction of justice to stifle, suppress or destroy evidence knowing that it may be wanted in a judicial proceeding or is being sought by investigating law enforcement officers. The subject has been dealt with in Kentucky where, like New Jersey, obstructing justice is a common law crime. See Commonwealth v. Southern Express Co., 160 Ky. 1, 169 S.W. 517, L.R.A. 1915 B. 913 (Ct. App. 1914), where defendant removed corporate records out of the state knowing that such records would be called for by a grand jury which was about to convene. And *119 see Brown v. Commonwealth, Ky., 263 S.W.2d 238 (Ct. App. 1954), where an automobile, in the sheriff's custody and suspected of containing illegal liquor, was driven off by defendant to avoid execution of a search warrant; and Commonwealth v. Berry, 141 Ky. 477, 133 S.W. 212, 33 L.R.A., N.S., 976 (Ct. App. 1911), where defendant spirited away a witness he knew would be called before the grand jury, notwithstanding the fact that no judicial proceeding was pending and the grand jury had not yet been impaneled.
Analogy might well be made to the refusal of a witness to turn over to police a revolver used in a homicide, when demand was made therefor after the crime had been committed and before a formal complaint of murder had been made. Can it seriously be argued that such witness could withhold the murder weapon from police during their investigation? We think not. If such an event occurred, we see no reason why such witness could not be indicted and prosecuted for the crime of obstructing justice.
It is undisputed that defendant knew crimes against the State (solicitation of a bribe) had been committed; that the wire and tape recordings he obtained contained vital evidence thereof, and that a police investigation of such crimes had been instituted. He initiated the investigation himself, and was provided with recording equipment to obtain evidence and the assistance of a police officer. He had no right to secrete, suppress or destroy such evidence, knowing that it might be wanted in a judicial proceeding or that it was being sought by investigating officers. We are satisfied that one who knowingly and willfully impedes a lawfully conducted investigation by police of a crime, whether or not a formal charge has been made or a grand jury proceeding begun, can be prosecuted for the crime of obstructing justice.
We find no error in the trial court's denial of defendant's motion for a judgment of acquittal, nor, following our review of the record, do we find that the jury's verdict was against the weight of the evidence.

*120 II
We consider next the alleged errors in the court's charge to the jury.
Defendant claims the court erred in telling the jury that both the State and defendant had made certain contentions, and then stated them. He argues that since no affirmative testimony was offered on his behalf, there were no "contentions" on the part of defendant, and that the effect of the court's remarks was to require defendant to prove such contentions in order to be found not guilty. The argument is without merit. The contentions of defendant were presented by his defense counsel and the court had the right to refer to them in its charge. See State v. Schilling, 95 N.J.L. 145 (E. & A. 1920). Moreover, the trial court repeatedly told the jury that the State had the burden of proving defendant guilty beyond a reasonable doubt.
Defendant next contends the court erred in refusing to charge that on the question of criminal intent the jury could consider an alleged agreement made with the Clifton Police Department whereby the contents of the recordings would be revealed only at his discretion. We find no prejudicial error in the court's refusal to so charge the jury. Such an agreement would have no legal efficacy and would not justify defendant's obstruction of justice by refusing to surrender the recordings to law enforcement officers who were investigating the bribery charges.
Defendant also objected to the following statement in the court's charge:
"The defendant also claims that the tape recordings are unnecessary in the investigation or were unnecessary in the investigation of the councilmen because they merely corroborated what defendant Cassatly told Sergeant De Groot concerning his conversations with the councilmen in which they allegedly solicited bribes of him. Defendant claims that Sergeant De Groot could testify to the conversations which defendant Cassatly told him he had with the councilmen. It is not true that Sergeant De Groot could so testify, as this type of testimony is referred to as hearsay and is not permitted in evidence." *121 He argues this was an incorrect statement of the law  that at a bribery trial of Zwier and Moorman the police sergeant could testify concerning what he heard in the recorded conversations between defendant and the councilmen. We find no prejudicial error in the charge. The plain meaning of the court's language was that De Groot could not testify concerning conversations he had with Cassatly at such a trial because it would be hearsay. That such was the court's meaning is fully set forth in the record.
Whether De Groot could testify as to the recorded conversations he heard between defendant and the councilmen is a question not before us in this case. It undoubtedly would depend upon various factors, such as Cassatly's testimony at such a trial (if, in fact, Cassatly would testify), whether the recordings were authentic and correct, and that no changes or deletions therein had been made before De Groot was permitted to listen to the same.

III
Defendant contends the court erred in denying his motion for a mistrial when Zwier, called as a witness by the State, was advised by the prosecutor and the court of his constitutional right to refuse to testify. After denial of the mistrial motion, Moorman was called by the State and also advised of his constitutional rights over the objection of defendant. Defendant argues that permitting these witnesses to be warned of such rights in the presence of the jury was prejudicial error.
We do not agree. The granting of a mistrial is a matter within the sound discretion of the trial judge and will not be reversed unless there is a clear showing of harm to defendant or an abuse of discretion. State v. O'Leary, 25 N.J. 104, 116 (1957). Here, the court told the jury that the warning given to the witnesses was not to be considered as having any detrimental effect upon defendant. Moreover, Zwier and Moorman were still subject to indictment and prosecution on *122 the bribery charge. Under such circumstances it was not improper to warn these witnesses of their privilege to refuse to testify. See State v. DeCola, 33 N.J. 335, 341-342 (1960); State v. Fary, 19 N.J. 431, 436 (1955); Commonwealth v. Slaney, 345 Mass. 135, 141, 185 N.E.2d 919, 924 (Sup. Jud. Ct. 1962); Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, 144 A. 294 (Sup. Ct. 1928); 8 Wigmore, Evidence (McNaughton rev. 1961), § 2269, p. 412.

IV
Finally, defendant argues that he cannot be found guilty of obstructing justice in refusing to produce the recordings because of his constitutional privilege against self-incrimination.
We fail to see how the production of the recordings could possibly expose defendant to criminal liability on the theory that he could be charged with the crime of bribery. The recording equipment was furnished to defendant by the police, without any intention on the part of defendant to offer a bribe, but only to secure evidence of bribe solicitations by the councilmen.
Moreover, defendant's privilege against self-incrimination under the Fifth Amendment does not extend to a right to withhold the property of another  in this instance the property of the police department itself. See United States v. White, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542, 1546 (1943). Here the recordings demanded by the police were not sought to be used against defendant  this valuable evidence was to be used in order to bring about the indictment and prosecution of the councilmen in question.
And finally, it is clear that the privilege now asserted by defendant was never claimed at any time prior to indictment, or before or during the trial of the cause. We conclude that defendant's reliance upon the privilege against self-incrimination is without merit.
The judgment of conviction is affirmed.