887 A.2d 1151

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN CAMILLO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 7, 2005—Decided December 27, 2005.

Before Judges CONLEY,[1] WEISSBARD and WINKELSTEIN.

*Christopher Olsen* argued the cause for appellant (*Olsen & Henry,* attorneys; *Mr. Olsen,* of counsel and on the brief).

[1] Judge Conley did not participate in oral argument. With the consent of counsel, she has joined in this opinion.

*Melissa Piccioni,* Assistant Prosecutor, argued the cause for respondent (*Robert D. Bernardi,* Burlington County Prosecutor, attorney; *Alexis R. Agre,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

In this appeal, the question presented is whether defendant's refusal to provide his name, date of birth, and social security number to a state trooper who required the information to prepare an incident report constituted an obstruction of the administration of law pursuant to *N.J.S.A.* 2C:29–1a. We conclude that under the facts of this case it did not, and consequently we reverse defendant's March 24, 2004 conviction of that offense.

We take the material facts from the March 24, 2004 municipal court trial in Southampton Township. On November 2, 2003, at approximately 6:45 p.m., New Jersey State Trooper Daniel Deichman, Jr. was dispatched to a location on a dirt road off of Mill Street in Vincentown to investigate a verbal dispute. Information had been received in a 911 call that a man threatened to burn someone's house down.

When the trooper arrived at the scene, defendant and his girlfriend were standing by a van that had broken down on private property. The property owners, later identified as Mr. and Mrs. Good, were standing along Mill Street about 150 feet away from the van. Defendant told the trooper that after his girlfriend's van broke down, he arrived to help her. Mr. Good approached him, pointed a finger at his chest, and told him to leave; Good threatened to have him arrested for trespassing. At that point, a verbal argument ensued and "someone" called 911.

Good said he did not want to pursue the matter; he just wanted defendant and his girlfriend off of his property as soon as the van was repaired. Nevertheless, the trooper decided to document the incident "just in case the owner of the property had further

problems and wished to pursue the matter ... on a later date." To prepare his report, he required the parties' names, dates of birth, and social security numbers.

The Goods provided the information, as did defendant's girlfriend. Defendant refused. He became agitated, said he knew his rights, and refused to cooperate. The trooper discussed the situation with him over the next several minutes, and finally gave him an ultimatum: if he did not provide the information he would be placed under arrest and charged with obstruction. Defendant responded that he would rather go to jail. The trooper obliged him. He arrested defendant, handcuffed and searched him, secured him in the troop car, and drove him to the State Police barracks. The trooper found no identification on defendant when he searched him at the barracks.

Defendant was at the barracks from forty-five minutes to an hour. He was charged with obstruction of the administration of law. Before he left, he provided his name, address, date of birth, and social security number.

On those facts the municipal court judge found defendant guilty of obstructing the administration of law. The court imposed the appropriate fines, assessments and court costs. On de novo review, the Law Division also found defendant guilty.

■ The statute that defendant was convicted of violating was enacted as part of the Code of Criminal Justice (Code), effective September 1, 1979. It reads:

Obstructing administration of law or other governmental function a. A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
[N.J.S.A. 2C:29-1a.]

The purpose of this statute is "to prohibit a broad range of behavior designed to impede or defeat the lawful operation of

government." *Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II, 1971, at 280. Nevertheless, language was placed in the enactment to confine its limits to "(1) violent or physical interference, (2) other acts which are 'unlawful' independently of the purpose to obstruct the government." *Ibid.* Given the statutory purpose, defendant argues that merely refusing to answer the officer's questions is not a criminal act; that in the absence of any violent or physical interference with the officer's duties, or obstruction by means of an independent unlawful act, he could not have been convicted of the statute. We agree.

Prior to the enactment of *N.J.S.A.* 2C:29–1 in 1979, a defendant could be convicted of the common-law crime of obstruction of justice in the absence of physical interference. "Under the common law it was a misdemeanor to do any act which prevents, obstructs, impedes, or hinders the due course of public justice." *State v. Cassatly,* 93 *N.J.Super.* 111, 118, 225 *A.*2d 141 (App.Div. 1966), *certif. denied,* 48 *N.J.* 448, 226 *A.*2d 435 (1967). Similarly, before enactment of the current statute, the statutory offense of obstruction also lacked "physical" interference as an element of the crime. It provided that: "[a]ny person who in any place, public or private ... obstructs, molests or interferes with any person lawfully therein ... is a disorderly person." *State v. Lashinsky,* 81 *N.J.* 1, 6, 9, 404 *A.*2d 1121 (1979) (citing *N.J.S.A.* 2A:170–29 (person who obstructs or interferes with person lawfully in public or private place is a disorderly person)). The statute did not "import the notion that the prohibited conduct must be physical in nature." *Id.* at 9, 404 *A.*2d 1121; *see also State v. Smith,* 46 *N.J.* 510, 513–14, 520, 218 *A.*2d 147 (verbal disturbance in a public meeting sufficient to meet requirements for finding of guilt under *N.J.S.A.* 2A:170–29), *cert. denied,* 385 *U.S.* 838, 87 *S.Ct.* 85, 17 *L.Ed.*2d 71 (1966); *State v. Taylor,* 38 *N.J.Super.* 6, 29–30, 118 *A.*2d 36 (App.Div.1955) (actual physical interference with police officer not a prerequisite to conviction); *cf. N.J.S.A.* 2A:99–1, repealed by *L.* 1978, *c.* 95, eff. Sept. 1, 1979 ("Any person who knowingly and willfully obstructs, resists ... person duly authorized, in serving or executing ... process or order of

court, or who assaults, beats or wounds any such officer ... while he is engaged in serving or executing the same, ... is guilty of a misdemeanor).

Under the revised statute, however, not just any interference with the administration of law constitutes the criminal act of obstruction. "The wide sweep of the common law crime of obstruction of justice" was significantly narrowed by the adoption of the Code. *State v. Kent,* 173 *N.J.Super.* 215, 222, 418 *A.*2d 1322 (App.Div.1980). Simply obstructing, impairing or perverting the administration of law or the governmental function is no longer a statutory violation; the obstruction must be carried out in a manner described in the statute: "by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." *N.J.S.A.* 2C:29–1; *Kent, supra, ibid.*

Here, defendant did not commit that conduct. He did not physically interfere with Trooper Deichman. What he did was refuse to provide information the trooper required to complete his incident report. While defendant's actions may, in fact, have in a real sense obstructed the trooper from preparing his report, that conduct, in the absence of physical interference, is not a violation of *N.J.S.A.* 2C:29–1a.

In support of its position that defendant's conduct was a violation of the obstruction statute, the State points to language in *State v. Brennan,* 344 *N.J.Super.* 136, 143, 780 *A.*2d 585 (App.Div. 2001), *certif. denied,* 171 *N.J.* 43, 791 *A.*2d 221 (2002), that says "if the police are performing a law enforcement function in an appropriate manner, *i.e.,* not with an excessive use of force, then a citizen is obligated to comply with the directions of the police. Failure to do so can result in a number of offenses, including obstruction, *N.J.S.A.* 2C:29–1 . . . ." Because, however, Brennan was charged with defiant trespass, a violation of *N.J.S.A.* 2C:18–3b, *id.* at 138, 780 *A.*2d 585, not obstruction under *N.J.S.A.* 2C:29–1, the court did not examine what type of conduct would constitute criminal obstruction pursuant to *N.J.S.A.* 2C:29–1. In other

words, the court did not address whether mere obstruction, or physical obstruction, was necessary for a conviction under *N.J.S.A.* 2C:29–1. The State's reliance on *Brennan*, therefore, is misplaced.

Next, the State relies on *State v. Wanczyk*, 201 *N.J.Super.* 258, 493 *A.*2d 6 (App.Div.1985). There, the defendant resisted a pat down by a police officer. *Id.* at 262–63, 493 *A.*2d 6. The court concluded that his resistance interfered with the police officer's ability to perform his duties and constituted criminal obstruction. *Id.* at 266, 493 *A.*2d 6. That may be so. Nonetheless, the defendant both verbally and physically abused police officers by resisting their efforts to complete a pat down search. *Ibid.* That conduct is substantively different from what occurred here.

The State also relies upon *State v. Perlstein*, 206 *N.J.Super.* 246, 502 *A.*2d 81 (App.Div.1985). In that case, the defendant was stopped by a law enforcement officer for having a PBA sticker on her windshield. *Id.* at 249, 502 *A.*2d 81. The officer gave her a chance to remove it, but the defendant became uncooperative, refused to remove it, refused to provide her driver's license and registration, and complained that she was being harassed. *Id.* at 249–50, 502 *A.*2d 81. While the defendant was convicted of *N.J.S.A.* 2C:29–1, her conviction was grounded on her refusal to exhibit her driver's license and insurance card, *id.* at 251, 502 *A.*2d 81, which is a violation of an independent unlawful act. *See N.J.S.A.* 39:3–29. Thus, it was the provision in *N.J.S.A.* 2C:29–1a that prohibits obstruction "by means of any independently unlawful act" that was the basis of her conviction, not her verbal statements to the officer. In fact, in *Perlstein*, we specifically indicated that *N.J.S.A.* 2C:29–1 "is limited to situations where there is violent or physical interference or where other acts occur which are unlawful independently of the purpose to obstruct government." *Id.* at 253, 502 *A.*2d 81 (citing *Kent, supra,* 173 *N.J.Super.* at 222, 418 *A.*2d 1322).

Two other cases decided after the enactment of *N.J.S.A.* 2C:29–1 upon which the State relies are *State v. Doss,* 254 *N.J.Super.*

122, 603 *A*.2d 102 (App.Div.), *certif. denied,* 130 *N.J.* 17, 611 *A*.2d 655 (1992); and *State v. Hernandez,* 338 *N.J.Super.* 317, 768 *A*.2d 1062 (App.Div.2001). Neither supports the State's position.

In *Doss, supra,* the defendant was convicted of *N.J.S.A.* 2C:35–10, third-degree possession of cocaine. 254 *N.J.Super.* at 124–25, 603 *A*.2d 102. At issue in that case was the validity of a search that discovered illegal drugs. *Id.* at 125, 603 *A*.2d 102. What happened was, the police were patrolling an area in South Bridgeton where drug trafficking was known to be prevalent, when they came upon a group of people. *Ibid.* Their vehicle was recognized as a police car and someone in the crowd yelled a warning that the police were coming. *Ibid.* When that happened, four or five persons ran from the crowd. *Ibid.* One was later identified as the defendant, who continued to run after the police told him to stop. *Ibid.* When officers caught up with him, they arrested him. *Id.* at 125–26, 603 *A*.2d 102. A baseball cap balled up in his hand contained cocaine. *Id.* at 126, 603 *A*.2d 102. The defendant was charged with disorderly conduct in violation of *N.J.S.A.* 2C:33–2. *Ibid.*

We agreed with the trial court that the seizure of the cap was lawful because it was incident to a lawful arrest. *Id.* at 130, 603 *A*.2d 102. Also, relying on *Lashinsky, supra,* we suggested that refusing to obey the order to stop constituted "interference" within the meaning of *N.J.S.A.* 2C:29–1. *Id.* at 130–31, 603 *A*.2d 102. The State has construed this comment to mean that obstruction under *N.J.S.A.* 2C:29–1 may be found by the mere refusal to follow a police officer's order, regardless of whether the defendant commits a physical act. We disagree for two reasons. First, our comment in *Doss* was dictum. The defendant was not charged with violating the obstruction statute. Second, and significantly, the conduct referred to in *Doss* was the defendant's failure to stop when told to do so by the police officer. That conduct was a physical act, interference by means of flight, conduct that is not present here. *Doss* does not support the State's position.

The same reasoning holds true with regard to *Hernandez, supra*, 338 *N.J.Super.* 317, 768 *A.2d* 1062. There, the defendant refused to follow the instructions of police officers to leave the area while an officer arrested the defendant's brother. *Id.* at 323–24, 768 *A.2d* 1062. That conduct too constituted a physical act by the defendant—the refusal to leave the scene. Said another way, the physical acts of Doss and Hernandez—when Doss failed to stop when told to, and Hernandez did not leave when ordered to—are qualitatively different from defendant's failure to give the requested information to the state trooper. The conduct of Doss and Hernandez involved physical interference with the officer's orders, defendant's conduct did not.

The State essentially takes the position that any interference, regardless of whether the interference was violent, physical, or neither, is sufficient to support a conviction for obstruction under *N.J.S.A.* 2C:29–1. That construction, however, effectively reads out of the statute the requirement of interference by violence or physical conduct; it is contrary to the tenet of statutory construction that "words used by the Legislature have a purpose and a meaning and that we cannot assume that the Legislature used superfluous or meaningless language." *In re Adoption of N.J.A.C. 13:38–1.3(F) by the State Bd. of Optometrists*, 341 *N.J.Super.* 536, 545, 775 *A.2d* 629 (App.Div.2001). The State's interpretation would have just that effect by making the term "physical interference" meaningless.

The language of *N.J.S.A.* 2C:29–1a is clear. It requires that obstruction be "by means of flight, intimidation, force, violence, or physical interference or obstacle." *N.J.S.A.* 2C:29–1a. Here, none of these conditions existed.

Nonetheless, even if we were to find some ambiguity in the language of *N.J.S.A.* 2C:29–1, which we do not, the ambiguity may not inure to the benefit of the State. *State v. Alexander*, 136 *N.J.* 563, 573, 643 *A.2d* 996 (1994). The rule of lenity requires us "to construe penal statutes strictly and interpret ambiguous language in favor of a criminal defendant." *State v. Livingston*, 172 *N.J.*

209, 218, 797 *A*.2d 153 (2002). Consequently, we would be required to construe that ambiguity in favor of defendant.

We are mindful that defendant's actions here did, in a very real way, interfere with the trooper's duties. Nevertheless, the obstruction statute requires a physical interference, not merely an interference. Criminalizing the type of conduct committed by defendant in this case must come from the Legislature, not the courts. Consequently, we reverse and vacate defendant's conviction.

Reversed.