**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5593-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELELAKE J. JEFFERSON, JR.,

     Defendant-Appellant.

_____

> Argued November 8, 2018 – Decided December 17, 2018
>
> Before Judges Fuentes and Vernoia.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-06-1551.
>
> Richard H. Kotkin argued the cause for appellant.
>
> Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Kayla E. Rowe, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Elelake J. Jefferson, Jr., appeals from a judgment of conviction, entered after a bench trial, finding him guilty of the disorderly persons offense of obstructing administration of law or other governmental function in violation of N.J.S.A. 2C:29-1(a). Based on our review of the record, we find there is insufficient evidence supporting the conviction, and reverse.

Defendant was charged in an indictment with fourth-degree obstruction of the administration of law or other governmental function, N.J.S.A. 2C:29-1(a) (count one), third-degree possession of a stolen handgun, N.J.S.A. 2C:20-7(a) (count two), fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count three), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count four). Defendant's trial took place over three days.

The evidence showed that on January 22, 2016, officers from the South Orange and Montclair police departments investigated an incident in South Orange that involved a motor vehicle.[1] At approximately 3:00 a.m., officers went to the Montclair home defendant shared with his parents in search of the vehicle, but it was not present in the driveway or street. A few hours later,

---

[1] The trial record does not include any details concerning the nature or type of the incident. The record reflects that the court made a pretrial ruling excluding evidence at trial concerning the incident under investigation.

A-5593-16T1

Montclair police officers observed the vehicle in the driveway of defendant's home.

At approximately 7:00 a.m., South Orange Detectives Brian McGuire and Ernesto Morillo went to the home, where they met Montclair Detectives Joe Anderson and Pierre Falaise and other officers. The home was "recessed from the street." In a conversation that "was not particularly loud," officers were instructed to secure the rear of the house to ensure that no one left the house when the detectives approached its front door.

The detectives knocked on the front door, and defendant's father, Elelake Jefferson Sr., answered. Detective Falaise told Jefferson Sr. that the detectives "were looking to speak with his son." It was cold outside, and the detectives asked if they could enter the home. Jefferson Sr. allowed the detectives to enter, where they stood in the foyer and spoke with him.

Detective Falaise testified defendant's bedroom was located off of the hallway that extended directly from the foyer into the home. Detective Morillo explained that Jefferson Sr. said he believed defendant was home because the bed in the room was unmade, a space heater next to the bed was on and defendant's keys were in the room. According to Detective Falaise, defendant

3

did not leave the bedroom or traverse the hallway and enter the basement door while the detectives were in the home.

As the detectives stood with Jefferson Sr. in the hallway, there was a noise "like something falling, maybe metal, something metal hitting the ground, like a crash." Detective Falaise asked Jefferson Sr. if anyone else was in the house, and Jefferson Sr. said "it might be" defendant. According to Detective Falaise, he asked Jefferson Sr. if they could "check to see if it was" defendant "downstairs" where "[i]t sounded like [the noise] was coming from." Detective Falaise testified Jefferson Sr. led him and Detective Anderson down the hallway to the basement door.

As Detectives Falaise and Anderson went into the basement, they said, "Montclair Police. Is there anyone down here?" They made the statement "to announce [themselves] so people know that [they're] coming down," because Detective Falaise did not "want to get injured, [because] people think [they're] somebody else."

At the foot of the basement stairs is a "big room." Detective Falaise walked through the room and through a doorway into another room, but did not see defendant. He walked through another open doorway into a storage area or closet and saw defendant standing against the wall. Detective Falaise told

defendant to exit the storage area, and defendant complied. The detectives did not place defendant under arrest, but they handcuffed him for their safety and brought him upstairs. Detective Falaise testified defendant was cooperative and never ran away, fled, impeded or intimidated the detectives or employed any physical force or violence against them.

The vehicle was towed to the South Orange Police Department. A search warrant was issued for the vehicle. During a subsequent search, Detective Morillo recovered a handgun from the spare tire compartment of the trunk.

At the close of the State's case, the court dismissed the three weapons charges. The court determined the State failed to present sufficient evidence permitting a reasonable jury to find beyond a reasonable doubt that defendant possessed the handgun that was found in the vehicle. See State v. Reyes, 50 N.J. 454, 458-59 (1967). The court denied defendant's motion to dismiss the obstruction charge alleged in count one.

Jefferson Sr. testified as a defense witness. He explained that he permitted the detectives to enter his home because it was "freezing outside." He asked the detectives to remain in the foyer and never granted them permission to enter the basement. Jefferson Sr. said he first went into the basement to look for

defendant because the detectives wanted to speak with him. He told the detectives he did not find defendant and that defendant was not home.

In her decision from the bench, the judge found defendant did not go into the basement after the detectives entered the home. Instead, the judge found "defendant may have heard the police and gone downstairs" before the detectives entered the home.

The judge further found that the detectives "yell[ed]" downstairs, "Montclair Police. Is there anyone down here?" The judge found the basement door was open and "assum[ed]" that if the detectives and Jefferson Sr. had been talking upstairs, that "voices carry."

The court found that it appeared defendant "would have heard some conversation" either while he was "in the basement or prior to the . . . detectives coming into . . . the house." The court observed that it did not know "what was in [defendant's] mind," but found he "chose to go down [into] the basement and chose to secrete himself in the closet." The court further found that "as soon as the officer called [defendant], he came out."

Based on those findings, the court concluded "there is an impairment on [defendant's] part to obstruct" the detective's effort to question him. The court found defendant guilty of the lesser-included offense of disorderly persons

6

obstruction under N.J.S.A. 2C:29-1. Defendant, who spent 523 days in custody awaiting trial, was sentenced to time served and the payment of fines and penalties. This appeal followed.

On appeal, defendant makes the following arguments:

Point I

The Police Officers Lacked Probable Cause To Search Through-Out The Home Of The Appellant, Elelake Jefferson, Jr.

Point II

The State Did Not Prove The Appellant, Elelake Jefferson, Jr., Obstructed The Administration Of Law Or Other Governmental Function Beyond A Reasonable Doubt.

Our review of a judge's verdict following a bench trial is limited. State v. Miller, 449 N.J. Super. 460, 472 (App. Div. 2017), certif. granted, 234 N.J. 1 (2018). "The standard is not whether the verdict [is] against the weight of the evidence, but rather 'whether there is sufficient credible evidence in the record to support the judge's determination.'" Ibid. (quoting State ex rel. R.V., 280 N.J. Super. 118, 121 (App. Div. 1995)).

We defer to the judge's findings of fact "which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy," State v. Locurto, 157 N.J. 463, 471

7

(1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)), and "do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice," Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). A reviewing court, however, owes no deference to the trial court in deciding matters of law. State v. Gandhi, 201 N.J. 161, 176 (2010).

The court found defendant guilty of violating N.J.S.A. 2C:29-1(a), which provides that a person commits an offense:

> if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
>
> [N.J.S.A. 2C:29-1(a) (emphasis added).]

"[N]ot just any interference with the administration of law constitutes the criminal act of obstruction." State v. Camillo, 382 N.J. Super. 113, 118 (App.

Div. 2005). "Simply obstructing, impairing or perverting the administration of law or the governmental function" does not violate N.J.S.A. 2C:29-1(a). Ibid. The statute prohibits only "(1) violent or physical interference, [or] (2) other acts which are 'unlawful' independently of the purpose to obstruct the government." Id. at 117 (quoting Final Report of the New Jersey Criminal Law Revision Commission, Vol. II, 1971, at 280). To support a conviction under N.J.S.A. 2C:29-1(a), the State must prove that the obstruction is "carried out in a manner described in the statute: 'by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.'" Ibid. (emphasis added) (quoting N.J.S.A. 2C:29-1(a)).

Here, there is no evidence defendant engaged in any acts of intimidation, used force or violence, physically interfered with the detectives or committed any independent unlawful act. To the contrary, Detective Falaise testified defendant was cooperative and not violent, and acknowledged defendant did not use force or violence and did not engage in any unlawful acts or acts of intimidation. According to Detective Falaise, defendant was given a single directive, to exit the storage area, and he immediately complied. Cf. State v. Reece, 222 N.J. 154, 172 (2015) (upholding obstruction conviction where the defendant attempted to close a door on officers as they entered to "perform an

official function under the emergency-aid doctrine"); <u>State v. Williams</u>, 192 N.J. 1, 11 (2007) (holding the defendant violated N.J.S.A. 2C:29-1(a) by fleeing after being ordered by the police "to place his hands on his head for a pat-down search"); <u>State v. Crawley</u>, 187 N.J. 440, 460 (2006) (holding defendant violated N.J.S.A. 2C:29-1(a) by fleeing after an officer ordered the defendant to stop for questioning).

The court did not expressly identify a physical action encompassed by N.J.S.A. 2C:29-1(a) that supports defendant's conviction. However, a fair reading of the court's decision reflects that the court determined defendant committed the offense by "prevent[ing] or attempt[ing] to prevent a public servant from lawfully performing an official function <u>by means of flight</u>." N.J.S.A. 2C:29-1(a) (emphasis added). The court's verdict is based on its limited finding that defendant "would have heard some conversation, either [while] in the basement or prior to the . . . detectives coming . . . into the house" and "chose to go down [in] the basement and . . . secrete himself in the closet."[2] The court's findings are not supported by substantial credible evidence.

---

[2] The court also stated "if there was nothing to flee from there would be nothing to flee," but did not explain the relevance of this vague observation to its fact-findings or legal conclusion that defendant violated N.J.S.A. 2C:29-1(a).

There is no evidence defendant "chose to go down [in] the basement" after the detectives entered the home or after he purportedly heard Jefferson Sr. speaking to the detectives in the foyer. To the contrary, the undisputed evidence shows defendant was in the basement before Jefferson Sr. allowed the detectives to enter the home. The detectives testified the basement door is located in the hallway adjacent to the foyer where they stood speaking to Jefferson Sr., and Detective Falaise testified defendant was not seen in the hallway going into the basement.

The court's determination defendant committed obstruction by flight is also based on its finding defendant "would have heard some conversation . . . prior to the . . . detectives coming into . . . the house."[3] The court's finding defendant "would have heard" the detectives speaking outside of the home before they entered is unsupported by any evidence. The record is bereft of evidence the detectives had a conversation while outside defendant's home during which anyone said defendant's name or that they were present to administer a law or perform a government function related to defendant. Moreover, there is no evidence defendant was present for any conversation the

---

[3] In a similarly equivocal finding, the court stated, "I think [defendant] may have heard the police and gone downstairs."

A-5593-16T1

detectives had while outside or otherwise could hear such a conversation from the confines of his home. The lack of evidentiary support for the court's finding defendant prevented or attempted to prevent the detectives from lawfully performing an official function by means of purported flight into the basement requires a reversal of his conviction.[4] See N.J.S.A. 2C:29-1(a).

The record also does not support the court's conclusion that defendant violated N.J.S.A. 2C:29-1(a) by remaining in the basement after the detectives entered the home. The detectives did not have a warrant for defendant's arrest and did no more than advise Jefferson Sr. that they wanted to speak with defendant. Even assuming, as the court did, that defendant might have heard the detectives tell Jefferson Sr. that they wanted to speak with him, defendant was under no obligation to speak to the police or make himself available in his own home to answer the detectives' questions. Under such circumstances, defendant's decision to remain in the basement after the detectives expressed an interest in speaking with him neither constituted flight nor any other physical

---

[4] We do not suggest the court would have been correct in finding defendant committed an offense under N.J.S.A. 2C:29-1(a) if the evidence showed defendant went into the basement in response to hearing a conversation among detectives while they were outside of his home. We need not decide the issue because, as noted, there is no evidence there was such a conversation, defendant heard such a conversation or that defendant went into the basement in response to such a conversation.

12

action obstructing the administration of law or any other government function. See Camillo, 382 N.J. Super. at 118 (holding the defendant did not commit the offense of obstruction under N.J.S.A. 2C:29-1(a) by refusing to supply information required by a state trooper to complete a report). The court erred by finding otherwise.

Defendant also argues his conviction should be reversed because he was discovered in the basement as the result of an unlawful, warrantless search of his home. Given our reversal of defendant's conviction on other grounds, it is unnecessary to address the contention.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-5593-16T1