**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2227-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KELBY B. KRAMER,

     Defendant-Appellant.

_____

Argued November 6, 2019 – Decided December 27, 2019

Before Judge Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 18-022.

John Menzel argued the cause for appellant.

Paula Cristina Jordao, Assistant Prosecutor, argued the cause for respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; Paula Cristina Jordao, on the brief).

PER CURIAM

The Florham Park Municipal Court convicted defendant of driving while intoxicated (DWI), N.J.S.A. 39:4-50, obstructing the administration of the law, N.J.S.A. 2C:29-1(a), and reckless driving, N.J.S.A. 39:4-96. The court sentenced defendant to three months loss of driving privileges and assessed mandatory fines and penalties. Following a de novo trial, the Law Division again found defendant guilty of the same charges and imposed the same sentence as the municipal court.

Defendant filed this appeal. He contends the following arguments warrant reversal of convictions:

> I. With Only Observations of Defendant's Eyes, Breath, and Demeanor, Police Had Neither Reasonable Suspicion to Justify Ordering Her to Get Out of Her Car Nor Probable Cause to Arrest Her.
>
> II. Because Defendant Fully Cooperated With Police Beginning When They Guided Her Out of Her Car and at All Times Thereafter, the State Failed to Prove Beyond a Reasonable Doubt that She Purposefully Obstructed, Impaired, or Perverted the Administration of Law via Affirmative Interference with Governmental Functions.
>
> III. The State Failed to Prove that Defendant Drove Either Recklessly or Carelessly.

After reviewing the record in light of defendant's arguments, we affirm.

2

I.

We derive the following facts from the record. Just before midnight on October 1, 2016, Officer Daniel Braico of the Florham Park Police Department observed defendant leave the Wyndham Hamilton Park Hotel in her car and attempt to turn left and northbound onto Park Avenue. Instead, she turned into the southbound lane, placing her head-on with oncoming traffic. Another vehicle flashed its high beams to alert defendant of her error. Defendant corrected her course and proceeded to the northbound side of the median.

Based on these observations, Officer Braico signaled defendant to pull over; upon asking for her credentials, he immediately "smelled a potent odor of alcohol emanating from the interior of [her] vehicle and also observed her eyes to be watery and bloodshot." Asked if she consumed any alcohol, defendant responded she was "fine." When asked if that meant she previously drank alcohol, she nodded affirmatively. Defendant mistakenly thanked Officer Braico multiple times for warning her of her wrong turn, confusing him with the driver who flashed high beams at her. Defendant confirmed she had just left a bar located in the hotel.

Due to his suspicion that defendant was intoxicated, Officer Braico instructed defendant to exit her vehicle so he could administer field sobriety testing (FST). In response, defendant questioned why she needed to exit her vehicle and expressed

3

concern over performing any testing in her high heels. Officer Braico explained the FST and, after informing defendant multiple times of his suspicion of DWI, he took her keys based on his concern defendant would attempt to drive away.

Officer David Rubelowsky then arrived to provide backup for the stop. He also instructed defendant to exit her vehicle multiple times, informing her of his suspicion of DWI, and the need for her to submit to FST; however, defendant continued to express confusion as to why she needed to exit her vehicle.

Officer Geoffrey Rothrock also provided backup, detected alcohol on defendant's breath, and noticed her eyes bloodshot and watery. He explained to her that she had to exit her vehicle so Officer Braico could continue his investigation of DWI and administer the FST. In response, defendant claimed she did not understand, asked what her options were, and proclaimed she was a "good person."

Officer Rothrock repeated his instructions and explained he needed a "yes or no" answer, if she was willing to exit her vehicle, because he believed defendant intended to stall the investigation. If she did not comply, he explained he would place her under arrest for obstruction. Defendant did not respond to his warning. Thereafter, Officers Rothrock and Braico escorted defendant out of her vehicle and placed her under arrest. While transporting defendant to the police station, Officer Braico noticed his vehicle smelled of alcohol.

At the station, defendant said she consumed only one glass of wine. According to Officer Rothrock, his first three attempts to administer the Alcotest to defendant failed because her breath samples were inadequate, as defendant blew "very softly" into the machine. On the fourth attempt, defendant finally provided an adequate breath sample, indicating a blood alcohol content (BAC) of .089; a fifth breath sample indicated a BAC of .091. At that point, the police charged defendant with the charges under review, and also careless driving, N.J.S.A. 39:4-97.

At trial, the municipal court judge found both Officers Braico and Rothrock "clearly very credible[,]" forthright and consistent in their testimony. When addressing the obstruction charge, the judge distinguished defendant's current case from State v. Powers, 448 N.J. Super. 69 (App Div. 2016), and found defendant guilty beyond a reasonable doubt because "defendant here repeatedly refused to exit her vehicle after repeated instructions to do so. . . [t]hat in itself I find constitutes a physical interference or obstacle satisfying the first prong of 2C:29-1(a)."

The judge also found defendant guilty of DWI and reckless driving, after reviewing the officer's testimony and the evidence submitted. He dismissed the careless driving offense as a lesser-included offense of the reckless driving charge.

On December 13, 2018, following a trial de novo, the Law Division judge found defendant guilty of the same charges as the municipal court and issued a

comprehensive forty-one-page written opinion explaining her decision. The judge found Officers Braico and Rothrock credible, describing their testimony as "candid and forthright," with "each officer . . . corroborat[ing]. . . the other officer on a number of material facts, including the fact that defendant failed on multiple occasions to abide by officers' instruction that she had to exit her vehicle to undergo [FST] on the night of the incident."

The judge first addressed whether the police officers had sufficient reasonable suspicion of DWI to ask defendant to exit her vehicle. She ruled Officer Braico's observations of defendant's motor vehicle violation and his observations during his initial contact permitted him to "broaden[] his inquiry to ask defendant if she had been drinking." She ruled, "Given defendant[] sidestepping [his] direct question about whether she had anything to drink by saying she was 'fine,' in addition to what [he] had just smelled, seen and heard," the officers established reasonable suspicion to ask defendant to exit her vehicle to perform FST.

The judge next addressed whether the police officers had probable cause to arrest defendant for DWI. She found after Officer Braico first observed and pulled defendant over for careless driving, "he immediately detected a potent odor of alcohol emanating from the interior of her car and saw that her eyes were bloodshot and watery." She noted that Officer Rothrock made the same observations when he

addressed defendant, and that all three officers explained to defendant why she needed to exit her car, but defendant continued to indicate she did not understand.

The judge ruled, "In light of the totality of these circumstances, the court finds [the] officers had a well-grounded suspicion that defendant's consumption of alcohol had affected her judgement, making it improper for her to drive. Thus, there was probable cause to arrest defendant on suspicion of DWI."

The judge then carefully analyzed the evidence present and concluded the State had proven defendant guilty of DWI by both the per se standard, based on the BAC readings, N.J.S.A. 39:4-50(a), and the observational standard. State v. Bealor, 187 N.J. 574, 590 (2006).

Addressing whether defendant drove recklessly, the judge found Officer Braico observed defendant turn into oncoming traffic and drive within twenty feet of another vehicle, which "suggest[ed] a lack of due caution on her part and creat[ed] a serious safety concern." She found, independent of defendant's intoxication, defendant still drove recklessly. She concluded the State demonstrated beyond a reasonable doubt defendant "drove heedlessly, showed a wanton disregard for the safety of those around her, and her driving conduct was likely to endanger another person or property." Therefore, she found defendant guilty of reckless driving.

A-2227-18T1

Regarding the obstruction charge, the judge found defendant was "beating around the bush" and "stalling," when she disregarded the officer's repeated requests to exit her vehicle. She ruled defendant's actions prevented the officers from performing their official duties and found that it was "defendant's conscious object[ive] to avoid exiting the car to perform FST, even though defendant was physically able to get out of her car."

Based upon her detailed findings, the trial judge concluded that the State met its burden in establishing, beyond a reasonable doubt, that defendant was guilty of DWI, reckless driving, and obstruction.

## II.

In reviewing a judgment of the Law Division on a municipal appeal, this court applies a sufficiency of the evidence standard. See State v. Ugrovics, 410 N.J. Super. 482, 487-88 (App. Div. 2009). This court must "determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). "When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result . . . ." Ibid.

Superior Court review of a municipal court conviction is conducted de novo on the record. R. 3:23-8. The Superior Court should defer to the municipal court's

credibility findings. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing Johnson, 42 N.J. at 161-62). However, the municipal court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995). Thus, "[o]n a de novo review on the record, the reviewing court . . . is obliged to make independent findings of fact and conclusions of law, determining defendant's guilt independently but for deference to the municipal court's credibility findings." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3:23-8 (2018).

III.

We first address defendant's argument that the trial court erred in finding that the arresting officers had reasonable and articulable suspicion of a violation of law, to support requesting defendant to submit to FST. Specifically, defendant claims the observations of Officer Braico and Officer Rothrock regarding "defendant's eyes, breath, and demeanor" did not provide the requisite reasonable suspicion of intoxication to request that she exit her vehicle.

We are guided by well-settled principles. A police officer may, without a warrant, conduct an investigatory traffic stop based on a reasonable and articulable suspicion that a defendant committed a traffic offense. "[A] stop founded on a suspected motor vehicle violation essentially is governed by the

A-2227-18T1

same case law used to evaluate a stop based on suspected criminal or quasi-criminal activity."  State v. Golotta, 178 N.J. 205, 213 (2003).

> The "articulable reasons" or "particularized suspicion" . . . must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced.  Such observations are those that, in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonabl[y] warrant the limited intrusion upon the individual's freedom.
>
> [State v. Davis, 104 N.J. 490, 504 (1986).]

Reasonable suspicion is a "lower standard than the probable cause necessary to sustain an arrest."  Golotta, 178 N.J. at 213.  Reasonable articulable suspicion may exist even if there is an innocent explanation for the objective facts.  See State v. Citarella, 154 N.J. 272, 279-80 (1998) ("The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as a reasonable person would find the actions consistent with guilt.") (internal quotation marks and citation omitted).

During an investigatory stop, an officer may require a driver to perform field sobriety tests if the officer has reasonable suspicion of DWI.  See State v. Bernokeits, 423 N.J. Super. 365, 374 (App. Div. 2011) ("In our view, administration of the field sobriety tests is more analogous to a Terry stop than

to a formal arrest, and therefore may be justified by a police officer's reasonable suspicion based on particularized, articulable facts suggesting a driver's intoxication.").

We are satisfied that these facts support a reasonable and articulable suspicion that defendant was driving under the influence, sufficient to warrant FST. The municipal judge found both officers credible and the trial judge on de novo review reasonably adopted those same credibility findings. The trial judge also found Officer Braico – who observed defendant's motor vehicle violation, talked to defendant and immediately smelled alcohol, and noticed her blood shot and watery eyes – "properly broadened his inquiry to ask defendant if she had been drinking."

During the inquiry, the judge found defendant sidestepped questions regarding drinking, later nodded in affirmation that she consumed alcohol, admitted to leaving a bar, and confused Officer Braico on several occasions with another driver. Additionally, she found Officer Rothrock smelled alcohol on defendant's breath and observed her bloodshot eyes. The judge's factual findings clearly establish the officers had reasonable suspicion to request defendant exit her vehicle to conduct formal FST. Bernokeits, 423 N.J. Super. at 374.

We next turn to defendant's obstruction charge. Defendant argues she fully cooperated with the police officers "beginning when they guided her out of her car and at all times thereafter, the [S]tate failed to prove beyond a reasonable doubt that she purposefully obstructed, impaired, or perverted the administration of law via affirmative interference with governmental functions."

N.J.S.A. 2C:29-1(a), obstructing administration of law or other governmental function, provides:

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.
>
> [N.J.S.A. 2C:29-1(a).]

"The purpose of this statute is 'to prohibit a broad range of behavior designed to impede or defeat the lawful operation of government,'" and confines its limits to "(1) violent or physical interference, [or] (2) other acts which are 'unlawful' independently of the purpose to obstruct the government." State v. Camillo, 382 N.J. Super. 113, 116-17 (App. Div. 2005) (quoting Final Report of the New Jersey

Criminal Law Revision Commission, Vol. II, 1971, at 280).  Under the statute, "not just any interference with the administration of law constitutes the criminal act of obstruction."  Id. at 118.

> Simply obstructing, impairing or perverting the administration of law or the governmental function is no longer a statutory violation; the obstruction must be carried out in a manner described in the statute: "by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act."  N.J.S.A. 2C:29-1.
>
> [Ibid.]

Defendant's argument focuses on her cooperative conduct only after the officers found she obstructed their investigation of her DWI and ignores her actions prior to her arrest.  The municipal judge found her actions constituted a "physical interference or obstruction."  The trial judge agreed, finding it was defendant's "conscious objective" to delay the officer's investigation of her DWI and she only exited her vehicle when escorted by the officers.

We agree with the trial judge's finding that defendant's actions amounted to obstruction.  The record clearly demonstrates defendant's attempts to delay the officer's investigation of her DWI by not exiting her vehicle to perform FST and by failing to obey the instructions of three different officers.  Officer Braico made multiple attempts to administer FST to defendant, as did his partner, Officer

Rubelowsky. After these efforts proved unsuccessful, Officer Braico called Officer Rothrock for assistance in dealing with defendant's delay tactics. Officer Rothrock further explained FST to defendant, and then provided her with an ultimatum: either perform FST or be arrested for obstruction. By failing to comply with the officers' commands to exit her vehicle to perform FST, she physically interfered with the investigation of her DWI. See Camillo, 382 N.J. Super. at 118.

We next turn to defendant's argument that the police did not have probable cause to arrest defendant for DWI. In finding probable cause, a court must examine the totality of the circumstances, State v. Moore, 181 N.J. 40, 46 (2004) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983); State v. Novembrino, 105 N.J. 95, 122 (1987)), "and view those circumstances from the standpoint of an objectively reasonable police officer." State v. Basil, 202 N.J. 570, 585 (2010) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted)).

Probable cause for DWI exists where an officer has a well-founded suspicion that an offense has been committed, State v. Moskal, 246 N.J. Super. 12, 21 (App. Div. 1991) (citing State v. Wanczyk, 201 N.J. Super. 258, 266 (App. Div. 1985)), meaning the officer "'had reasonable grounds to believe' that the driver was operating a motor vehicle in violation of" the DWI statute. Moskal, 246 N.J. Super. at 21 (quoting Strelecki v. Coan, 97 N.J. Super. 279, 284 (App. Div. 1967)). Probable

14

cause requires more than a bare hunch or suspicion, but less than the legal evidence required for conviction beyond a reasonable doubt. State v. Waltz, 61 N.J. 83, 87(1972).

The trial judge's conclusions are well supported by the testimony of Officers Braico and Rothrock regarding their observations of defendant, her bloodshot eyes, her driving into oncoming traffic, her admission of drinking alcohol and leaving a bar, and her smelling of alcohol. The judge correctly found, based on the totality of the evidence presented, the officers had "reasonable grounds to believe" defendant operated her vehicle while intoxicated. Moore, 181 N.J. at 46. We agree with the trial judge's findings because her analysis is consistent with applicable law and "could reasonable have been reached on sufficient credible evidence present in the record." Johnson, 42 N.J. at 162.

Lastly, we address defendant's reckless driving charge. Defendant argues the State failed to prove defendant drove either recklessly or carelessly. Specifically, she argues her driving never "posed any danger to any person or property. Nor was there willful operation." Under N.J.S.A 39:4-96, reckless driving states that:

> A person who drives a vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving and be punished by imprisonment in the county or municipal jail for a period of not more than 60 days, or by a fine of

not less than $50.00 or more than $200.00, or both.

[N.J.S.A. 39:4-96.]

The trial judge found defendant turning into oncoming traffic and driving within twenty feet of another driver showed a wonton disregard for the safety of others around her. The judge found defendant's conduct "was likely to endanger another person or property" and, even absent her DWI, found her driving reckless. The record amply supports these findings.

Defendant drove on the wrong side of a highway separated by a median and came within twenty feet of colliding with oncoming traffic. These facts alone amount to "sufficient credible evidence" to uphold the trial judge's findings that defendant drove recklessly. Johnson, 43 N.J. at162. Additionally, the judge found defendant was legally intoxicated based on the per se violation and circumstantial evidence. Defendant's erratic driving, in addition to her BAC, overwhelmingly supports the conclusion she drove recklessly. Ebert, 377 N.J. Super. at 12.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2227-18T1